**Roger L. HARRIS, Plaintiff–Appellant–Cross–Appellee,**

v.

**NIAGARA MOHAWK POWER CORPORATION, Defendant–Appellee–Cross–Appellant.**

**Docket Nos. 00–7063, 00–7105.**

United States Court of Appeals, Second Circuit.

Argued April 5, 2001.

Decided May 31, 2001.

John G. Powers, Hancock & Estabrook, Syracuse, NY, (Edward G. Melvin, Costello, Cooney & Fearon, Syracuse, NY, on the brief) for Plaintiff–Appellant–Cross–Appellee.

Louis Orbach, Bond, Shoeneck & King, Syracuse, NY, for Defendant–Appellee–Cross–Appellant.

Before: KEARSE, CABRANES, KATZMANN, Circuit Judges.

KATZMANN, Circuit Judge:

Plaintiff–Appellant–Cross–Appellee, Roger L. Harris ("plaintiff" or "Harris"), appeals from a judgment entered on December 21, 1999 in the United States District Court for the Northern District of New York (Scullin, *J.*) granting in part and denying in part a post-trial motion by defendant Niagara Mohawk Power Corporation ("Niagara") for judgment as a matter of law on his claims that Niagara's decisions to transfer him between departments and to terminate his employment were made in retaliation for his prior discrimination complaints. Niagara cross-appeals. Faced with a special verdict form containing contradictory findings with regard to two claims that were based on common facts, the district court chose to credit the jury's finding as to one claim and to vacate its finding on the other. Because we are unable to reconcile the two findings, we

vacate the judgment and remand for a new trial as to those claims.

## Background

Harris, who is African–American, was employed by Niagara in a variety of capacities over a twenty-year period beginning in February 1974 and continuing until his termination in June 1994. Although he began his employment with Niagara as a temporary meter reader, by the time of his termination he had advanced to a managerial position in Niagara's Collection Services department. In 1987 and 1988, he had filed complaints with the New York State Division of Human Rights, alleging that Niagara had failed to promote him to a management position due to discrimination based on his race, sex, and age, and in retaliation for his complaints of discrimination. The Department of Human Rights found there to be probable cause to believe that plaintiff had suffered discrimination based on his race, color, and sex, and in retaliation for his complaints. As noted by the district court, "[t]hese claims were eventually resolved by an Order After Stipulation dated September 30, 1991, in which Plaintiff executed a general release and Defendant agreed to pay plaintiff $8,950.00, elevate him to the position of Supervisor II—Customer Accounting, as well as provide him with certain pay adjustments." Following another complaint by Harris, Niagara was later found by the Department of Human Rights to have failed to fully comply with the Order, and was ordered to pay Harris back wages in the amount of $5,618.29 plus interest.

In May 1991, Harris began working at Niagara's Syracuse facility as a supervisor in the Revenue Recovery Unit of the Collection Services Department. As such, he was in charge of "assisting employees in the processing of bankruptcy accounts, handling final bills, processing of final bills, processing return post office mail," and for developing procedures by which the employees in the Revenue Recovery would carry out those tasks.

In October 1992, the plaintiff was transferred out of the Revenue Recovery Unit and made a supervisor within the Communications Center, another unit of the Collection Services Department. Kimberly Scott Evans, who was the Director of Collection Services at the time of the plaintiff's transfer, testified at trial that the transfer was neither a promotion nor a demotion, but rather part of a rotation designed to allow Niagara's supervisors to cross-train and to thereby help Niagara "build[ ] a deeper bench." While the plaintiff's title and salary remained the same in his new position in the Communications Center, he alleged that his duties and working environment changed. Specifically, he testified at trial that his duties were reduced to the monitoring of customer service calls, that he was placed in a less desirable office, that he was not provided with certain computer software needed to perform his job efficiently, and that he was subject to an additional level of supervision in his new position. The plaintiff therefore felt that he had been effectively demoted and filed an internal complaint with Niagara that same month.

Shortly thereafter, the plaintiff attempted to return to his former position in Revenue Recovery by applying for a job vacancy in that unit. He was interviewed for the position after Richard Lenart, the manager conducting the interviews, was advised by Niagara's EEO department that "it would probably be best" to interview the plaintiff "so that [Niagara] wouldn't get an EEO complaint[.][B]ecause more than likely he would file if [Niagara] did not interview him." The plaintiff was not chosen for the position. In February, 1993, the plaintiff filed a discrimination complaint with the Equal Employment Opportunity Commission

("EEOC"), alleging that his transfer to the Communications Center and the failure to transfer him back to the Revenue Recovery unit were based on his race and made in retaliation for his previous discrimination complaints. Less than one month after the filing of his complaint, the plaintiff received a negative performance evaluation for his work in the Communications Center.

In November 1993, the plaintiff received a memorandum from Niagara Vice President Michael Cahill stating that the Collection Services department would be moving to Buffalo, and that managers willing to move there would retain their jobs. However, according to Kimberly Scott Evans, Cahill was soon replaced, and, early in 1994, Niagara decided that it wanted to change the management style and organization of the Collection Services department. According to Evans and Gary Jesmain, Niagara's Director of Customer Service, sometime before April 1994, Niagara management decided to abolish the senior supervisor positions—such as the one held by the plaintiff—and to replace them with "team leader" positions. In March 1994, Niagara began posting information about the new team leader positions. The plaintiff applied for the team leader positions, and was interviewed by Richard Lenart. On June 8, 1994, Harris was informed that he had not been chosen as a team leader. That same day, he was informed that his position as a supervisor had been abolished and that his employment was therefore terminated. When asked why Harris was terminated, Kimberly Scott Evans testified that Harris had not been "a successful candidate for the team leader positions."

Harris was not the only supervisor terminated. While some other supervisors were kept on a temporary basis to help with the transition of the Collection Services department, four other supervisors in addition to Harris were terminated on June 7, 1994. All four were Caucasian, and there is no evidence in the record to indicate that any of them had a history of discrimination complaints against Niagara.

On June 9, 1995, Harris filed the instant action against Niagara, alleging retaliation and discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and section 296 of the New York Executive Law. His claims were based on, among other actions, his transfer to the Communications Center, Niagara's failure to transfer him back to the Revenue Recovery unit, the failure to hire him as a team leader, and his termination.

On August 24, 1999, a jury was seated and sworn. At the close of the evidence, the jury was charged and given a special verdict form. The form first asked the jury to conclude whether any discrimination or retaliation had taken place, and then asked that the jury "indicate, by letter as set forth on pages 8 and 9 of the Jury Charge, which adverse employment action alleged was done with intent to discriminate or in retaliation for Plaintiff filing a complaint." The jury found that Niagara had not discriminated against the plaintiff on the basis of race, but that it had engaged in retaliation. Specifically, the jury indicated that Niagara had retaliated against the plaintiff in relation to: (1) the plaintiff's transfer to the Communications Center; (2) the failure to transfer the plaintiff back to the Revenue Recovery Unit; and (3) the plaintiff's termination. It did not indicate that Niagara's failure to hire the plaintiff for a team leader position was retaliatory. Although the parties had agreed that the determination of damages would be made by the trial judge following a jury trial on liability, the jury was asked to give an advisory verdict with respect to

damages. The jury recommended an award of $150,000.

Following the trial, Niagara made a renewed motion for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure, arguing that no reasonable juror could find that Niagara's actions were taken in retaliation for the plaintiff's complaints.[1] The court denied the motion with respect to the plaintiff's transfer to the Communications Center and the failure to transfer him back to the Revenue Recovery Unit, finding that a reasonable juror could conclude that transferring the plaintiff to the Communications Center was an adverse employment action notwithstanding the continuity of job title and pay, and concluding that the evidence with regard to the causal connection between these two job actions and the plaintiff's complaints was sufficient to support the verdict.

The district court granted Niagara's motion with respect to the plaintiff's termination claim. After reviewing certain evidence relied upon by both sides, the court stated as follows:

> The Court finds that the overwhelming weight of evidence at trial established that Plaintiff was terminated simply because his position was abolished. Testimony from Dennis Flood, the Defendant's Director of Employee Corporate Relations, Ms. Scott, and several other witnesses, along with documentary evidence, established that other supervisors in the Collection Services Department, who were not selected to be team leaders, were terminated on the same day as the Plaintiff for the same reason—job abolishment.... The evidence Defendant introduced in this regard was compelling and never, to any effective degree, refuted by Plaintiff.

> ... Furthermore, Plaintiff's contention that his termination was causally connected to his prior, and continuing participation in, a protected activity was without evidentiary support. For example, Plaintiff argued that Defendant's decision not to select him for one of the new team leader positions, which were created due to Defendant's organizational restructuring, was evidence of unlawful termination. However, as Defendant correctly noted in its motion papers, the jury specifically rejected a finding that the Defendant's decision not to select Plaintiff for a team leader position constituted an adverse employment action.

> Likewise, although Plaintiff asserts that many of the supervisory personnel who were not offered team leader positions were offered temporary assignments, it does not negate the fact that Plaintiff's job was eliminated. The jury was not asked to consider whether such subsequent conduct by the Defendant constituted an adverse employment action.

> In sum, Plaintiff failed to meet his burden. He did not produce sufficient evidence from which a reasonable jury could conclude that his termination was caused by anything but a company-wide restructuring that abolished his position and the positions of others similarly situated.

Based on the remaining claims, the district court awarded Harris $25,000. Harris now appeals the court's grant of Niagara's motion for judgment as a matter of law on his termination claim, and Niagara cross-appeals the court's denial of the motion with respect to the remaining claims.

### Discussion

 A motion for judgment as a matter of law should be granted when "a party

---

1. In the alternative, Niagara requested a new trial pursuant to Fed.R.Civ.P. 59.

has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a)(1). The court considering a motion pursuant to Rule 50 may review all of the evidence, but "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *see Samuels v. Air Transp. Local 504,* 992 F.2d 12, 14 (2d Cir.1993); *Song v. Ives Laboratories, Inc.,* 957 F.2d 1041, 1046 (2d Cir.1992). When considering a Rule 50 motion after the jury has returned its verdict, the district court may set aside the verdict only where there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or ... such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him." *Song,* 957 F.2d at 1046 (quoting *Mattivi v. South African Marine Corp.,* 618 F.2d 163, 168 (2d Cir.1980)) (internal quotation marks omitted); *see Taylor v. Brentwood Union Free School Dist.,* 143 F.3d 679, 685 (2d Cir.1998), *cert. denied sub nom Taylor v. Rooney,* 525 U.S. 1139, 119 S.Ct. 1027, 143 L.Ed.2d 37 (1999); *Samuels,* 992 F.2d at 14. In other words, such a motion should be denied unless "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached." *Samuels,* 992 F.2d at 14 (quoting *Simblest v. Maynard,* 427 F.2d 1, 4 (2d Cir.1970)) (internal quotation marks omitted); *Song,* 957 F.2d at 1046. We review the district court's determination *de novo. See Taylor,* 143 F.3d at 685; *Samuels,* 992 F.2d at 14; *Song,* 957 F.2d at 1046.

We have reviewed the district court's determinations regarding Niagara's motion for judgment as a matter of law with respect to the claims based on its decision to transfer the plaintiff to the Communications Center and its failure to transfer him back to the Revenue Recovery Unit. Substantially for the reasons stated by the district court, we affirm the district court's denial of the motion.

The district court's determination with regard to the plaintiff's termination claim, however, is troubling in several respects. First, the court appears to have weighed the evidence, stating that "the overwhelming weight of evidence at trial established that Plaintiff was terminated simply because his position was abolished." It may also have made its own credibility assessments, as suggested by its statement that the testimony of certain defense witnesses was "compelling." As indicated above, courts reviewing motions for judgment as a matter of law "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves,* 530 U.S. at 150, 120 S.Ct. 2097.

Moreover, the district court did not consider evidence regarding Niagara's decision not to hire the plaintiff for one of the new team leader positions in assessing the sufficiency of the evidence on his termination claim. Niagara's failure to hire the plaintiff as a team leader is clearly relevant to his termination claim. As Kimberly Scott Evans stated, Harris was terminated because he was not "a successful candidate for the team leader positions." Thus, a reasonable juror could have considered actions taken during the team leader hiring process as germane to the plaintiff's termination.

While perhaps less than "compelling," there was ample evidence to support a causal connection between the plaintiff's

complaints of discrimination and his failure to succeed in the team leader hiring process.[2] For example, Richard Lenart, who was in charge of interviewing the plaintiff for the team leader position, was also the person who declined to transfer the plaintiff back to the Revenue Recovery Unit in 1992—an act the jury found to have been based on unlawful retaliation. The jury heard evidence that Lenart had known about the plaintiff's EEOC complaints, and that he had implied, in a conversation with another employee, that the plaintiff only had his job "because of his color." The jury also heard evidence that, according to Niagara's Organizational Staffing department, the plaintiff was more qualified for the team leader position than some applicants who were hired as team leaders. Thus, looking at the termination claim separately from the other claims advanced by the plaintiff, even if one accepts Niagara's assertion that the plaintiff's job as supervisor was abolished, a reasonable jury could have found that the decision not to hire him as a team leader, which led directly to his termination, was motivated by retaliatory animus.

The problem, of course, is that the jury did *not* find that Niagara discriminated in failing to hire the plaintiff for the team leader position. The district court's response to this apparent conflict was to credit the jury's finding that Niagara did not retaliate against the plaintiff when it passed him over for the team leader position, and so to refuse to consider the evidence underlying that decision in connection with the plaintiff's termination claim. That solution, however, is not appropriate for two reasons. First, if the evidence at trial was sufficient to warrant submission

of the termination claim to the jury, it did not become insufficient as a matter of law simply because the jury seemed to have rejected part of it. Because each of the plaintiff's claims exists independently from the others, the district court should have considered all of the evidence arguably relevant to the termination claim without regard to the jury's unfavorable verdict on the "team leader" claim. Had it done so, as indicated above, it would have found sufficient evidence to support the claim.

Secondly, and more importantly, we believe that the proper approach when faced with seemingly inconsistent verdicts is not to credit one finding and vacate the other. Rather, when faced with such an inconsistency, "a reviewing court must adopt a view of the case, if there is one, that resolves any seeming inconsistency." *Brooks v. Brattleboro Memorial Hospital,* 958 F.2d 525, 529 (2d Cir.1992) (internal quotation marks and citations omitted); *see Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 369 U.S. 355, 364, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962) ("Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way."); *Auwood v. Harry Brandt Booking Office, Inc.,* 850 F.2d 884, 891 (2d Cir. 1988). If no such resolution is possible, the Seventh Amendment requires that the court order a new trial. *See Brooks,* 958 F.2d at 529; *Auwood,* 850 F.2d at 891. Similarly, if we, as the reviewing court, are unable to harmonize the jury's findings, "we must vacate the judgment and order a new trial." *Auwood,* 850 F.2d at 891.

**2.** For good reason, the defendant did not dispute the fact that the plaintiff's termination was an "adverse employment action." Therefore, the only question before the district court on the Rule 50 motion was whether the evidence was sufficient to support a causal connection between the plaintiff's termination and any earlier complaints of discrimination protected by Title VII. *See generally Galdieri–Ambrosini v. National Realty & Dev. Corp.,* 136 F.3d 276, 285 (2d Cir.1998).

We have tried to reconcile the jury's findings (1) that Niagara's decision to terminate the plaintiff was motivated by retaliatory animus, and (2) that its decision not to hire him as a team leader was not motivated by retaliatory animus. We conclude, however, that such a reconciliation his not possible. As noted by the district court, if one disregards the evidence pertaining to Niagara's decision not to hire the plaintiff as a team leader, the remaining evidence is insufficient to support the jury's verdict on the termination claim. While it is true that some employees in the plaintiff's position were offered temporary positions rather than being terminated, it is also true that four supervisors other than the plaintiff—who had no history of discrimination complaints—were terminated on the same day as the plaintiff and for the same stated reason. Moreover, there is no evidence in the record that the plaintiff applied, either formally or informally, for such a position. And while the documentation authorizing the abolition of the plaintiff's position stated that the position was to be abolished several months after the plaintiff was, in fact, terminated, this does not suggest that there was a causal link between the plaintiff's complaints and his termination. Finally, the plaintiff's claim that Niagara failed to follow its downsizing procedures is not probative of Niagara's discriminatory intent because, *inter alia*, there is no indication that these procedures were applicable here. Moreover, we note that, as a general matter, "[t]he mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent." *Randle v. City of Aurora*, 69 F.3d 441, 454 (10th Cir.1995); *cf. Vaughan v. Metra-Health Co.*, 145 F.3d 197, 203 (4th Cir. 1998).

We must therefore conclude that the evidence in the record related to Niagara's decision not to hire the plaintiff as a team leader is necessary to support a finding of retaliatory termination. Thus, the jury's findings with regard to the "team leader" and termination claims are, in our view, irreconcilably inconsistent. We therefore have no choice but to vacate the judgment with respect to these two claims and to remand for a new trial. Because there is no such inconsistency among the verdicts rendered on the plaintiff's other claims, we will not disturb the judgment as to those claims. Because the district court's award of damages was based on its erroneous grant of judgment as a matter of law on the termination claim, we vacate the award as well. At the conclusion of the new trial, the district court will have the opportunity to reassess the appropriate damages based on the jury's determination of the "team leader" and termination claims, as well as on the two claims for which the first jury has already found liability.

Therefore, for the reasons stated above, we VACATE that portion of the district court's judgment granting judgment as a matter of law on the plaintiff's termination claim and the damage award, and REMAND for a new trial on the plaintiff's claims that Niagara's decisions not to hire him as a "team leader" and to terminate him were based on unlawful retaliation.