Victor CWEKLINSKY, Plaintiff–
Appellee–Cross–Appellant,

v.

MOBIL CHEMICAL COMPANY,
Defendant–Appellant–Cross–
Appellee.

No. 01–7848(L), 01–7944(XAP).

United States Court of Appeals,
Second Circuit.

Argued: May 22, 2002.

Decided: April 13, 2004.

---

Jeffrey J. Tinley, Tinley, Nastri, Renehan & Dost, L.L.P., Waterbury, CT (Robert Nastri, Jr., on the brief), for Defendant–Appellant–Cross–Appellee.

Victoria De Toledo, Casper & de Toledo, L.L.C., Stamford, CT (Rhonna W. Rogol, on the brief), for Plaintiff–Appellee–Cross–Appellant.

Before: McLAUGHLIN, JACOBS, and SACK, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This case is before us for the second time, following our certification to the Connecticut Supreme Court of certain questions regarding Connecticut defamation law. In response to those questions, the Connecticut Supreme Court held that Connecticut does *not* recognize a cause of action for defamation by compelled self-publication. *See Cweklinsky v. Mobil Chem. Co.*, 267 Conn. 210, 837 A.2d 759 (2004). Equipped with a newly delineated map of Connecticut's defamation law, we now turn to the merits of all the issues on appeal.

Defendant Mobil Chemical Company ("Mobil" or "the Company") appeals from a judgment of the United States District Court for the District of Connecticut (Squatrito, *J.*) entered on February 16, 2001. The judgment followed a jury verdict in favor of plaintiff Victor Cweklinsky ("Cweklinsky") on defamation and breach of implied contract claims, and in favor of Mobil on state and federal retaliation claims. For defamation, the jury awarded Cweklinsky $500,000 for lost earning capacity and $25,000 for emotional distress damages. For breach of implied contract, the jury awarded him $500,000 as future lost earnings and $122,000 in back pay. The jury also awarded punitive damages, which the court set at $177,000. Adding $13,000 in prejudgment interest but counting the $500,000 in lost earnings only once—because the two awards were duplicative—the court awarded Cweklinsky a total of $837,000.

On appeal, Mobil challenges the defamation and breach of implied contract verdicts on a number of grounds, pointing to what it believes were erroneous jury instructions that require us to vacate both.

Cweklinsky cross-appeals on two grounds. He contends that the district court: (1) improperly dismissed his promissory estoppel claim; *and* (2) erred in declining to add $122,000 back pay to his defamation award.

Given the decision of Connecticut's highest court on the issue of compelled self-publication defamation, we find that the district court erroneously instructed the jury on defamation. We likewise find that the court erred in instructing the jury on breach of implied contract, and thus we reverse the court's judgment on both issues. Although we dismiss Cweklinsky's request for back pay on the defamation claim, we agree that the district court

should have submitted Cweklinsky's promissory estoppel claim to the jury. Hence, we vacate the judgment on three separate grounds and remand for a new trial consistent with this opinion.

## BACKGROUND

We summarize the background only briefly here and assume familiarity with the underlying facts as set forth in our July 2002 decision, *Cweklinsky v. Mobil Chemical Company*, 297 F.3d 154 (2d Cir. 2002). In that opinion, we laid out the events leading up to Cweklinsky's termination in 1999 after more than twenty-four years of employment as a machinist at Mobil.

In 1998, Cweklinsky took six weeks of paid medical leave from Mobil to undergo carpal tunnel surgery. Although his physician authorized him to return to work on December 11, 1998, Cweklinksy went back to the doctor's office for an extension of his time to return because his wrist was still sore. Cweklinsky never told anyone in the doctor's office that Mobil had scheduled him to work on Saturday, December 12 and Sunday, December 13. The office manager gave him an extension until December 14. There was conflicting testimony about whether the doctor authorized his office manager over the phone to change Cweklinsky's note. Regardless, the office manager altered Cweklinsky's copy of the note to reflect the new December 14 return-to-work date. However, she failed to amend the office copy.

When Cweklinsky presented his amended note to his supervisor at Mobil on December 14, the supervisor consulted with Mobil's human resources manager. Together they concluded that Cweklinsky himself had altered the return-to-work date and thus terminated him. After further investigation, however, they discovered that the doctor's office manager, not

Cweklinsky, had changed the note, but, regardless, they again determined that termination was still appropriate because Cweklinsky had fraudulently obtained medical leave.

As detailed in our 2002 opinion, Cweklinsky subsequently sued Mobil for: (1) defamation; (2) breach of implied employment contract; (3) retaliation in violation of the Fair Labor Standards Act, 29 U.S.C. § 216, *et seq.*; (4) workers' compensation retaliation in violation of Conn. Gen.Stat. § 31–290a; *and* (5) numerous other claims which never reached the jury.

Because the status of the doctrine of compelled self-publication defamation was unsettled in Connecticut, our 2002 opinion certified three questions regarding state defamation law to the Connecticut Supreme Court. *Cweklinsky*, 297 F.3d at 161. The first and most general asked:

> Does Connecticut recognize a cause of action for defamation based on a plaintiff employee's or former employee's compelled self-publication of a defendant employer's or former employer's defamatory statements made by the employer or former employer only to the employee or former employee?

*Id.* The Connecticut Supreme Court recently responded in the negative, *see Cweklinsky v. Mobil Chem. Co.*, 267 Conn. 210, 837 A.2d 759 (2004), and thus found it unnecessary to address the two remaining queries, both of which were fact-specific and contingent on an affirmative answer to the first. *See Cweklinsky*, 297 F.3d at 161.

We now decide the merits of the appeal.

## DISCUSSION

I. *Defamation*

After his termination, Cweklinsky sued Mobil, claiming defamation on account of the allegations in its January 1999 termi-

nation letter that Cweklinsky "fraudulently obtain[ed] additional time off with full pay to which [he was] not entitled."

In instructing the jury, the district court stated that defamatory statements in Connecticut could be published by two different methods—by compelled self-publication as well as by intra-corporate publication. After a one-week trial, the jury found in favor of Cweklinsky on the defamation claim. In handing down its verdict, the jury concluded that Mobil's statements were defamatory and that the Company had failed to prove their truth by a preponderance of the evidence. The jury further found as a predicate for punitive damages that Mobil's conduct was "malicious or wanton."

Mobil challenges the defamation verdict, claiming that: (1) compelled self-publication defamation is not recognized in Connecticut, and thus the jury should not have been allowed to consider that doctrine; (2) even if compelled self-publication were part of Connecticut law, the award for future lost earnings is "based upon rank speculation" and therefore impermissibly expands the doctrine; (3) Cweklinsky's defamation pleadings were deficient as a matter of law; *and* (4) Mobil's statements were undeniably true, thus entitling it to judgment as a matter of law. We consider each argument below.

### A. *Self–Publication Defamation*

#### 1. *The Law*

■ We review a district court's jury instructions *de novo. Gordon v. New York City Bd. of Educ.,* 232 F.3d 111, 115 (2d Cir.2000). An instruction is erroneous "if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *Id.* at 116 (internal quotations omitted). Unless "convinced that [an erroneous instruction] did not in-

fluence the jury's verdict," we will reverse and grant a new trial. *Id.*

■ To succeed on a defamation claim in Connecticut, a plaintiff must show that: (1) defendant made a false statement about plaintiff; (2) defendant published the statement to a third party; *and* (3) plaintiff's reputation was thereby injured. *See Torosyan v. Boehringer Ingelheim Pharms., Inc.,* 234 Conn. 1, 662 A.2d 89, 103 (1995).

■ Connecticut recognizes that intra-corporate communications may satisfy the publication element of a defamation claim. *Id.* Although otherwise defamatory intra-corporate statements are usually privileged and thus an employer is protected from liability, malice on the part of an employer-defendant in making such a communication defeats the privilege. *See Gaudio v. Griffin Health Servs. Corp.,* 249 Conn. 523, 733 A.2d 197, 210–11 (1999); *Torosyan,* 662 A.2d at 103–04; *see also Bleich v. Ortiz,* 196 Conn. 498, 493 A.2d 236, 240 (1985).

■ Some states have also expanded the publication element of a defamation claim in the employment context by adopting the doctrine of compelled self-publication defamation. *See, e.g., Churchey v. Adolph Coors Co.,* 759 P.2d 1336, 1343–45 (Colo.1988) (*en banc* ); *Lewis v. Equitable Life Assurance Soc'y,* 389 N.W.2d 876, 888 (Minn.1986); *Belcher v. Little,* 315 N.W.2d 734, 737–38 (Iowa 1982); *McKinney v. County of Santa Clara,* 110 Cal.App.3d 787, 168 Cal.Rptr. 89, 93–95 (1980). This doctrine allows compelled self-publication by a plaintiff-employee to substitute for the traditional requirement of publication by a defendant-employer in cases where the compulsion is reasonably foreseeable. *See Lewis,* 389 N.W.2d at 888.

### 2. The Merits

■ In defining the parameters of Cweklinsky's defamation claim, the district court instructed the jury as to both intra-corporate publication and compelled self-publication. The district court specifically recognized compelled self-publication defamation as part and parcel of Connecticut law when it instructed the jury that Cweklinsky

> may prove the element of publication by establishing that he was compelled to repeat the defamatory statement to another person and that it was reasonably foreseeable to the defendant that the plaintiff would be forced to do so.

Because the verdict sheet did not require the jury to specify how publication of the defamatory statements took place, the jury handed down a general verdict on the publication element of defamation.

Mobil alleges that the district court erred in allowing the jury to consider the doctrine of compelled self-publication defamation, and that the error requires reversal of the verdict in Cweklinsky's favor. According to Mobil, the jury's defamation verdict was based on the compelled self-publication doctrine, which neither is, nor should be, recognized by Connecticut law.

In response to Mobil's argument, Cweklinsky argues that compelled self-publication defamation is "well-established in Connecticut." But, according to Cweklinsky, even if it were not, we would not have to reach it because the jury's verdict is supported equally by the alternate theory of intra-corporate publication defamation.

These are both arguments that we considered when the case was first before us in 2002. Finding that "Connecticut precedent on the doctrine of compelled self-publication defamation [was, in fact,] scarce," we asked the Connecticut Supreme Court to clarify its stance and certified to that court three questions pertaining to Connecticut defamation law. *Cweklinsky*, 297 F.3d at 159. Citing a host of policy concerns, the Connecticut Supreme Court joined what it referred to as the majority of jurisdictions in rejecting compelled self-publication defamation. *Cweklinsky*, 837 A.2d at 765–70.

The Connecticut Supreme Court's decision leaves us no choice but to vacate the verdict on Cweklinsky's defamation claim along with the award of $500,000 in future lost earnings attributable to Mobil's defamation. We have already rejected Cweklinsky's additional contention that the $500,000 defamation award can be based on *either* intra-corporate publication *or* compelled self-publication defamation. In certifying to the Connecticut Supreme Court, we explained that "[t]he $500,000 lost earnings award cannot fairly be attributed to any publication by Mobil because Mobil's publications failed to interfere with Cweklinsky's future job prospects in any meaningful way." *Cweklinsky*, 297 F.3d at 160. In light of the Connecticut Supreme Court's recent holding, we vacate the $500,000 award for future lost earnings on Cweklinsky's defamation claim.

As a result, we need not address Mobil's argument that awarding future lost earnings is improper on these facts, even if compelled self-publication defamation were recognized in Connecticut. Additionally, we do not address Mobil's vague allegation of "legally deficient" pleadings because that argument focuses primarily on insufficiencies in Cweklinsky's pleading of self-publication.

Nor do we reach Cweklinsky's claim on cross-appeal that he is entitled to $122,000 back pay to compensate him for Mobil's defamation.

We recognize that the jury's award of $25,000 for Cweklinsky's emotional distress damages could plausibly stem from

defamation via *either* compelled self-publication *or* intra-corporate publication, because the jury expressly found that Mobil had acted with the malice necessary to overcome its intra-corporate privilege. But, because we are unable to determine on precisely which theory the jury based its emotional distress award, we also vacate that award and remand for a new trial solely on a theory of defamation by intra-corporate publication. *See BAII Banking Corp. v. UPG, Inc.,* 985 F.2d 685, 704 (2d Cir.1993) (reversing judgment where unclear whether general verdict was based on proper or improper submission); *see also Levinsky's, Inc. v. Wal–Mart Stores, Inc.,* 127 F.3d 122, 136 (1st Cir.1997) (vacating verdict where unclear on which theory of defamation jury predicated verdict and finding erroneous instruction to have "poison[ed] the general verdict").

Remand of the defamation issue is appropriate in this case because Mobil's additional challenge to the defamation verdict, which we address below, lacks merit.

## B. *Judgment as a Matter of Law*

### 1. *The Law*

■ We review *de novo* a district court's denial of a motion for judgment as a matter of law made under Fed.R.Civ.P. 50. *Harris v. Niagara Mohawk Power Corp.,* 252 F.3d 592, 597 (2d Cir.2001).

■ In ruling on a motion for judgment as a matter of law, a district court must consider the evidence in the light most favorable to the non-movant and draw all reasonable inferences the jury could have drawn. *Id.* The district court may set aside a verdict only where there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture," or where the evi-

dence overwhelmingly compels a different verdict. *Id.* (internal quotations omitted).

■ Under Connecticut law, a defamatory statement is, by definition, untrue. *See, e.g., Goodrich v. Waterbury Republican–Am., Inc.,* 188 Conn. 107, 448 A.2d 1317, 1322 (1982); *Hartwig v. Albertus Magnus Coll.,* 93 F.Supp.2d 200, 218–19 (D.Conn.2000). As such, a true statement cannot be the basis of a claim for defamation. *See Torosyan,* 662 A.2d at 102.

### 2. *The Merits*

■ Mobil claims that the district court erred in denying its post-verdict motion for judgment as a matter of law pursuant to Rule 50 on Cweklinsky's defamation claim. According to Mobil, "the undisputed evidence is inconsistent with the jury's verdict" because no one could dispute the truth of its statement that Cweklinsky "fraudulently" extended his leave with full pay.

Given all of the evidence, we are not persuaded that "reasonable and fair minded men" could only find one way—that Mobil's statements were true. *Harris,* 252 F.3d at 597 (internal quotations omitted). The jury heard evidence that Cweklinsky went to his doctor's office in 1998 because his wrist was still sore, and that his doctor authorized the two-day extension of medical leave that gave rise to his dismissal. Because we find sufficient evidence to support the conclusion that Cweklinsky did *not* "fraudulently" take medical leave, we reject Mobil's request for judgment as a matter of law. Thus, we remand for a new trial on the issue of defamation via intra-corporate publication.

## II. *Breach of Implied Contract*

Cweklinsky premised his claim for breach of implied contract on both oral and written communications. According to Cweklinsky, a Mobil representative told

him, during his pre-employment interviews, that he would have a job as long as he complied with company procedure. Further, the employment manual given to Cweklinsky shortly after beginning work thirty years ago "guarantee[d] that a person always receives adequate instruction and warning . . . to enable [him] to correct [his] behavior before disciplinary action needs to be taken" and set forth the five-step disciplinary procedure used in most cases. The manual also detailed an "open door policy" pursuant to which Mobil would not retaliate against employees who voiced concerns.

Mobil issued two additional manuals in the mid–1980's and in 1990. According to the 1990 manual, its statements should not be construed as creating a contract between Mobil and Mobil's employees. Specifically, the manual stated that "[t]his handbook is not intended to create a contract of employment." This was the first time that such a disclaimer had appeared in any Mobil handbook.

At the close of the evidence, the district court instructed the jury to "completely disregard" any "statement in the handbooks in which Mobil attempts to disclaim that a contract existed." Thereafter, the jury found by a preponderance of the evidence that an implied contract did exist between Cweklinsky and Mobil, and that Mobil breached that contract. Accordingly, the jury awarded Cweklinsky back pay and future lost earnings.

In challenging the verdict on Cweklinsky's breach of implied contract claim, Mobil contends that: (1) its 1990 employee manual, rather than the 1970's or 1980's version, was effective at the time of Cweklinsky's termination; (2) the disclaimers in the 1990 manual were likewise operative as a matter of law; and, in the alternative, (3) whether the disclaimers were effective is, at a minimum, a question of fact, and thus

the court erred in instructing the jury to ignore any disclaimers in Mobil's employment manuals.

### 1. *The Law*

As discussed above, we review a district court's jury instructions *de novo*. *Gordon*, 232 F.3d at 115.

 It is settled in Connecticut that statements in an employer's personnel manual as well as those made to an employee by the employer's agent can give rise to an implied employment contract. *Gaudio*, 733 A.2d at 204; *Finley v. Aetna Life & Cas. Co.*, 202 Conn. 190, 520 A.2d 208, 213 (1987). However, what the parties intend to constitute the terms of their implied contract presents "a question of fact to be determined by the jury" considering "the totality of the employment relationship." *Heller v. Champion Int'l Corp.*, 891 F.2d 432, 435 (2d Cir.1989) (internal quotations omitted); *see also Torosyan*, 662 A.2d at 97 ("Absent . . . definitive contract language, the determination of what the parties intended to encompass in their contractual commitments is . . . an inference of fact."); *Coelho v. Posi–Seal Int'l, Inc.*, 208 Conn. 106, 544 A.2d 170, 173 (1988); *Finley*, 520 A.2d at 213.

 Likewise, whether subsequent employee manuals change the terms of an implied contract is itself a question of fact. *Torosyan*, 662 A.2d at 96–97; *see also Finley*, 520 A.2d at 213. The mere distribution of an employment manual does not establish conclusively that the manual's terms have become part of the implied contract, even where an employee continues to work after notice of the new manual. *Torosyan*, 662 A.2d at 98.

### 2. *The Merits*

Because the law in Connecticut governing implied contracts of employment is

sufficiently well developed, we did not certify to the Connecticut Supreme Court the question whether an employee is bound by disclaimers in a superseding employment manual, as Mobil requested.

■ In reviewing Connecticut law, we are persuaded by Mobil's argument that whether the disclaimers in its 1990 employment manual altered the terms of its implied contract with Cweklinsky is a question of fact. *See, e.g., id.; Finley,* 520 A.2d at 213–14. We thus find that the district court erred in instructing the jury to disregard completely the disclaimers in Mobil's employment manuals. In so doing, however, we also reject Mobil's arguments that the 1990 employment manual and the disclaimers therein were controlling as a matter of law.

■ Because we are unable to determine with certainty that the district court's erroneous instruction did not affect the jury's verdict, we cannot deem that error harmless. *Gordon,* 232 F.3d at 116. We therefore vacate the verdict on Cweklinsky's claim for breach of implied contract and remand the issue for a new trial before a properly instructed jury.

### III. *Promissory Estoppel*

In his claim for promissory estoppel, Cweklinsky claimed to have relied to his detriment on both Mobil's oral representations made during his employment interview and the written promises appearing in its employee manual.

Following the close of evidence, the district court refused to submit Cweklinsky's promissory estoppel claim to the jury. Explaining that "promissory estoppel is essentially the same thing as implied contract," the court found no need for the jury to consider both promissory estoppel and breach of implied contract.

On cross-appeal, Cweklinsky seeks to reinstate his promissory estoppel claim in the event that we reverse the implied contract judgment. Having so reversed, we now consider Cweklinsky's request.

#### 1. *The Law*

■ When a district court dismisses a plaintiff's claim without submitting it to the jury, we treat the dismissal as a Rule 50 judgment as a matter of law. *See Zahra v. Town of Southold,* 48 F.3d 674, 682 (2d Cir.1995). Therefore, we review such dismissals *de novo, see Harris,* 252 F.3d at 597, "drawing all reasonable inferences in favor of the [plaintiff]." *Zahra,* 48 F.3d at 683 (quoting *Sir Speedy, Inc. v. L & P Graphics, Inc.,* 957 F.2d 1033, 1039 (2d Cir.1992)).

■ Under Connecticut law, implied contract and promissory estoppel have distinct requirements. *See, e.g., Chotkowski v. State of Connecticut,* 240 Conn. 246, 690 A.2d 368, 380 (1997). On the one hand, "[a] contract implied in fact, like an express contract, depends on actual agreement." *Id.* at 380 n. 26 (quoting *Therrien v. Safeguard Mfg. Co.,* 180 Conn. 91, 429 A.2d 808, 810 (1980)). To establish an implied contract, a plaintiff must show by a preponderance of the evidence that the other party "agreed, either by words or actions or conduct, to undertake [some] form of actual contract commitment." *Coelho,* 544 A.2d at 173 (quoting *D'Ulisse–Cupo v. Bd. of Dirs. of Notre Dame High Sch.,* 202 Conn. 206, 520 A.2d 217, 220 n. 2 (1987)).

■ On the other hand, promissory estoppel permits recovery based on a sufficiently clear and definite promise, even in the absence of the consideration required to create a contract. *D'Ulisse–Cupo,* 520 A.2d at 221 (citing Restatement (Second), Contracts § 90 (1973)); *see also Stewart v. Cendant Mobility Servs. Corp.,* 267 Conn.

96, 837 A.2d 736, 742–43 (2003). A claim for promissory estoppel is

> predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury.

*Chotkowski*, 690 A.2d at 380 (quoting *Connecticut Nat'l Bank v. Voog*, 233 Conn. 352, 659 A.2d 172, 179 (1995)).

 The Connecticut Supreme Court has held that a claim for breach of implied contract is distinct from a promissory estoppel claim. *D'Ulisse–Cupo*, 520 A.2d at 220 & n. 2 (finding error in treating plaintiff's claims under breach of implied contract theory rather than under promissory estoppel doctrine). In *Stewart v. Cendant Mobility Services Corp.*, the Connecticut Supreme Court reinforced this reading by rejecting the contention that "for purposes of a claim of promissory estoppel, the promise upon which [a] promisee relies must be no less specific and definite than an offer to enter into a contract." *Stewart*, 837 A.2d at 744. In so doing, the court distinguished between an offer to enter into a contract, on the one hand, and a promise, on the other. *Id.* at 744, 745 n. 7. It stated explicitly that "a promise need not be the functional equivalent of an offer to enter into a contract." *Id.* at 745. Thus, a jury could not be faulted for finding that, while there was no breach of implied contract, recovery was appropriate based on promissory estoppel. *Id.* at 744–45.

### 2. *The Merits*

Applying Connecticut law, we hold that the district court erred in dismissing Cweklinsky's promissory estoppel claim.

The court incorrectly found that promissory estoppel and breach of implied contract are "essentially the same thing." As the Connecticut Supreme Court has held, a jury may plausibly find promissory estoppel but deny a contract-based claim. *See, e.g., Stewart*, 837 A.2d at 744; *D'Ulisse–Cupo*, 520 A.2d at 219–21.

In so concluding, we reject Mobil's reliance on *Pavliscak v. Bridgeport Hosp.*, 48 Conn.App. 580, 711 A.2d 747 (1998), in which Connecticut's Appellate Court held that "it is not possible to make [a promise] while at the same time failing ... to undertake some form of actual contract commitment." *Id.* at 754–55. This holding is inconsistent with previous and subsequent case law, and we find that Connecticut Supreme Court in *Stewart* implicitly rejected the reasoning of *Pavliscak*. *Stewart*, 837 A.2d at 744; *see also Lawson v. Aetna Life Ins. Co.*, 1998 WL 929645, at *3 & nn. 1–2 (Conn.Super.Ct.1998) (noting tension between *D'Ulisse–Cupo* which "implies that a cause of action for promissory estoppel may exist" and conflicting language of *Pavliscak* ); *Antignani v. United Home Care*, 1998 WL 417549, at *2 (Conn.Super.Ct.1998) (finding breach of implied contract and promissory estoppel to be "distinct causes of return, and ... therefore not repetitive").

 Because we reverse the implied contract verdict and remand the claim for a new trial, we also reinstate Cweklinsky's promissory estoppel claim and order the trial court to submit both issues to the jury. We note, however, that recovery for both promissory estoppel and breach of implied contract would be duplicative, and thus Cweklinsky's damages would be limited on remand to recovery under only one of the theories.

### CONCLUSION

For the above reasons, we VACATE the defamation and breach of implied contract

verdicts, and REMAND to the district court for a new trial on intra-corporate defamation, breach of implied contract, and promissory estoppel.