13-1685-cv
OOO "Garant-S" v. Empire United Lines Co., Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of February, two thousand thirteen.

PRESENT:  REENA RAGGI,
            DENNY CHIN,
            CHRISTOPHER F. DRONEY,
                 *Circuit Judges*.

-----------------------------------------------------------------------

OOO "GARANT-S",

            *Plaintiff-Appellant*,

         v.                           No. 13-1685-cv

EMPIRE UNITED LINES CO., INC., MICHAEL KHITRINOV AKA MICHAEL HITRINOV,

            *Defendants-Appellees.*

-----------------------------------------------------------------------

APPEARING FOR APPELLANT:       KOSTYANTYN NESTEROV, ESQ. (Dmitri A. Chernov, Esq., *on the brief*), Rockville, Maryland.

APPEARING FOR APPELLEES:       JON WERNER, ESQ. (Edward P. Flood, Esq. *on the brief*), Lyons & Flood, LLP, New York, New York.

1

Appeal from a judgment of the United States District Court for the Eastern District of New York (Frederic Block, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on March 29, 2013, is AFFIRMED.

Plaintiff OOO "Garant-S" ("Garant-S") appeals from the grant of summary judgment in favor of Defendants Empire United Lines Co., Inc. ("Empire") and Michael Khitrinov ("Khitrinov") for breach of contract and various tort claims under New Jersey state law resulting from the theft of two motor vehicles. Specifically, Garant-S challenges determinations that Empire's liability is statutorily limited to $1,000 (which Empire has paid), and that Khitrinov is not the alter ego of Empire. We review an award of summary judgment <u>de novo</u>, viewing the record evidence in the light most favorable to non-moving party Garant-S and drawing all reasonable inferences in its favor. <u>See</u> Fed. R. Civ. P. 56(a); <u>Royal & Sun Alliance Ins., PLC v. Ocean World Lines, Inc.</u>, 612 F.3d 138, 144 (2d Cir. 2010). We assume the parties' familiarity with the facts and record of the underlying proceedings, which we reference only as necessary to explain our decision to affirm.

1.      <u>Empire's Limited Liability</u>

Garant-S contends that the district court erred in ruling that the Carriage of Goods by Sea Act, ch. 228, 49 Stat. 1207 (1936) (codified as a note to 46 U.S.C. § 30701) ("COGSA"),[1] limited Empire's liability to $1,000 for three reasons: (1) COGSA does not apply to Garant-S's claims; (2) Empire's unreasonable actions deprived it of the benefit of limited liability; and (3) Garant-S was denied a fair opportunity to declare a value in excess of the standard limited liability amount.

First, we agree with the district court that, although a bill of lading never issued, COGSA applied because Empire's house bill of lading expanded COGSA's scope to reach the time at which the two later-stolen vehicles came into Empire's possession at its Elizabeth, New Jersey warehouse. COGSA applies "to all contracts for carriage of goods by sea between the ports of the United States and the ports of foreign countries." <u>Nippon Fire & Marine Ins., Co. v. M.V. Tourcoing</u>, 167 F.3d 99, 100 (2d Cir. 1999). It "applies by its own force [] during 'the period from the time when the goods are loaded on to the time when they are discharged from the ship.'" <u>Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.</u>, 230 F.3d 549, 557 (2d Cir. 2000) (quoting former 46 U.S.C. § 1301(e)). Parties may also by bill of lading "'contractually extend COGSA's

---

[1] Until 2006, COGSA was codified at 46 U.S.C. § 1300, <u>et seq</u>.

application beyond its normal parameters.'" Id. (quoting Colgate Palmolive Co. v. S/S Dart Canada, 724 F.2d 313, 315 (2d Cir. 1983)). Here, Empire's house bill of lading states that Empire "undertakes responsibility from the place of receipt if named herein or from the port of loading to the port of discharge or the place of delivery if named hereto." J.A. 141. Moreover, a previous bill of lading between the parties lists the "place of receipt" as Elizabeth, New Jersey. Because the two automobiles were stolen after arriving at Empire's Elizabeth, New Jersey facility, COGSA applies by contract to limit the liability for each package to $500.

Garant-S contends that COGSA does not apply here for two reasons. Garant-S first argues that COGSA does not apply because Empire never issued a bill of lading. We disagree. Although no bill of lading in fact issued for the two automobiles, this is because the automobiles were stolen at a point in the shipping process before Empire customarily issues the bill. Garant-S has shipped hundreds of vehicles with Empire since 2008, with a standard arrangement consisting of inland trucking of the automobiles from auction to Empire's Elizabeth, New Jersey location, where they await ocean carriage. The only bill of lading between the parties in the record lists Elizabeth, New Jersey as the "place of receipt," and Garant-S has provided neither evidence nor argument to suggest that this was not customary. Because there is no indication that the house bill of lading with which Garant-S had extensive experience would not have issued, COGSA applies by contract. Cf. Cweklinsky v. Mobil Chem. Co., 364 F.3d 68, 77 (2d Cir. 2004) (applying Connecticut law and stating that implied contract exists where parties "agreed, either by words or actions or conduct, to undertake [some] form of actual contract commitment" (alteration in original and internal quotation marks omitted)); Luckenbach S.S. Co., Inc. v. Am. Mills Co., 24 F.2d 704, 705 (5th Cir. 1928) (holding that parties may be bound by ocean bill of lading even where none had issued at the time cargo was lost).

Garant-S also argues that the house bill of lading distinguishes between "place of receipt" and "port of loading," and that the house bill of lading limits COGSA's application to when goods are delivered to the "port of loading" and not the "place of receipt." Garant-S never made this argument before the district court, however, and thus did not preserve it for appeal. See Baker v. Dorfman, 239 F.3d 415, 420 (2d Cir. 2000). Of course, this court has discretion to consider arguments raised for the first time on appeal, but we are unlikely to do so where the question is not purely legal and additional fact-finding is required. Id. Because additional fact-finding is required to determine whether the "place of receipt" and the "port of loading" are in fact distinct places, we decline to consider Garant-S's argument.[2]

---

[2] The only bill of lading in the record identifies the "place of receipt" as "Elizabeth, New

3

Second, assuming arguendo that Empire played a part in the theft, as Garant-S asserts, we agree with the district court that this is not an unreasonable deviation that nullifies COGSA's limitation of liability. The doctrine of "unreasonable deviation" deprives a carrier of its COGSA benefits, including limited liability, where the carrier engages in a deviation that is unjustifiable. Because this doctrine "grew out of the pre-COGSA law of marine insurance," however, it has been narrowly limited to a few specific scenarios. B.M.A. Indus., Ltd. v. Nigerian Star Line, Ltd., 786 F.2d 90, 91 (2d Cir. 1986). It was applied originally when a vessel geographically departed from its scheduled and anticipated route, causing an increased risk of danger to cargo. See id. It was later extended to unauthorized on-deck stowage, which again involved the increased risk of damage, see id. at 91–92 (citing pre- and post-COGSA case law), and to the issuance of bills of lading incorrectly stating that goods have been received on board because this was considered unreasonable under pre-COGSA admiralty law, see Berisford Metals Corp. v. S/S Salvador, 779 F.2d 841, 846 (2d Cir. 1985).

This court has declined to extend the doctrine further. In Iligan Integrated Steel Mills, Inc. v. S.S. John Weyerhaeuser, 507 F.2d 68 (2d Cir. 1974) (Friendly, J.), this court held that it was not an unreasonable deviation for a carrier knowingly or with gross negligence to supply an unseaworthy vessel that damaged cargo because holding otherwise would require inquiry into the carrier's culpability and thereby defeat COGSA's purpose of establishing clear and administrable rules for allocating loss. See id. at 72 (stating that "shippers or, realistically, their insurers would demand a further inquiry into the degree of the carrier's culpability, with enormous potential liability"). We have construed Iligan to apply even where a carrier is alleged to have engaged in conduct prohibited by the criminal law. See B.M.A. Indus., Ltd. v. Nigerian Star Line, Ltd., 786 F.2d at 92 (holding that it is not an unreasonable deviation for carrier's agent, whose actions are attributable to carrier, to accept bribe to deliver cargo to unknown party); Italia Di Navigazione, S.p.A. v. M.V. Hermes I, 724 F.2d 21, 22 (2d Cir. 1983) (holding that "systematic theft" by carrier does not amount to unreasonable deviation that would void statute of limitations). These cases control here. Whether a carrier intentionally gives the cargo to a briber after shipment or intentionally allows or participates in a theft prior to shipment is irrelevant, in both instances the carrier is responsible for having delivered the cargo to an improper party while COGSA applied.

---

Jersey," and the "port of loading" as "New Jersey." On that record alone, we cannot tell whether the "port of loading" is distinct from the "place of receipt."

Garant-S's attempt to distinguish this case from Nigerian Star on the grounds that there the carrier intended properly to deliver the cargo is unpersuasive. Nigerian Star assumed that the agent's intentional actions were attributable to the carrier when it held no deviation to apply no matter when in the shipping process the intended misdelivery occurred. Further, Garant-S's attempt to cast this case as an extreme geographical deviation is misplaced because that reasoning would equally apply to, and therefore be inconsistent with, Nigerian Star.

Third, the district court did not err in finding that Garant-S had a fair opportunity to declare a value in excess of $500 per package, i.e., per car. COGSA "provides that the carrier's liability is limited to $500 per package unless a higher value is declared by the shipper and inserted in the bill of lading, or the parties agree to a higher limit." Nippon Fire & Marine Ins. Co. v. M.V. Tourcoing, 167 F.3d at 101 (citing former 46 U.S.C. § 1304(5)). "Under the 'fair opportunity' doctrine, however, the COGSA limit is inapplicable if the shipper does not have a fair opportunity to declare higher value and pay an excess charge for additional protection." Id. (citation omitted). "The carrier bears the initial burden of proving fair opportunity." Gen. Elec. Co. v. MV Nedlloyd, 817 F.2d 1022, 1029 (2d Cir. 1987). Once the carrier presents prima facie evidence that an opportunity existed—something that can be established from the language of the bill of lading—the burden shifts to the shipper to demonstrate that a fair opportunity did not exist. See id.

Here, Empire's house bill of lading states:

> In no event shall the Carrier be or bec[o]me liable for any loss of or damage to or in connection with the Goods in an amount exceeding the limit per package or unit . . . provided for by [COGSA] . . . unless the nature and value of such goods have been declared by the Shipper before shipment, agreed by the Carrier [and] inserted in the Bill of Lading . . . .

J.A. 117. This unambiguously notifies the shipper both that COGSA applies to limit liability and that a higher value may be declared. Garant-S nonetheless maintains that this language does not constitute prima facie evidence of a fair opportunity because the bill of lading does not have a space to declare excess value. Cf. Binladen BSB Landscaping v. M.V. "Nedlloyd Rotterdam", 759 F.2d 1006, 1017 n.12 (2d Cir. 1985) (concluding that the burden was satisfied where the bill of lading incorporated COGSA and provided space for declaring excess value). The argument demands too much at the prima facie stage. Although it may be a best practice to include a space for an excess declaration, as the bill in

5

Binladen did, where the bill clearly states that liability is limited unless the nature and value of the goods is declared on the bill of lading, a specific space is not needed. This lack of space, of course, remains relevant to whether a fair opportunity was actually provided.

Here, we conclude that a reasonable jury presented with the totality of the evidence in the summary judgment record could find only that a fair opportunity was actually provided. It is uncontested that Garant-S had declared a higher value in the past, and Garant-S presented no evidence to suggest that the bill of lading that would have issued here but for the theft is in any way different from the past bills of lading, or that its interactions with Empire were materially different such that the previous method it used for declaring excess value was not available in this particular instance.[3] Moreover, Garant-S's denial that it knew of the limited liability is contradicted by its aforementioned admission that it previously declared excess value and belied by the fact that it is an experienced commercial shipper. See Gen. Elec. Co. v. MV Nedlloyd, 817 F.2d at 1029 (noting that "[a]s an experienced shipper, [the plaintiff] obviously knew it could declare a higher value"). The evidence compels the conclusion that Garant-S had an opportunity to declare a higher value and made a business decision not to do so. Thus, it cannot now adjust its loss calculation retrospectively by denying it had an opportunity to declare a higher value.

In sum, the district court did not err in granting partial summary judgment in Empire's favor.

2.      Khitrinov's Individual Liability

The district court also properly concluded that no reasonable jury could find that Empire is Khitrinov's alter ego. "Alter ego liability exists when a parent or owner uses the corporate form 'to achieve fraud, or when the corporation has been so dominated by an individual or another corporation (usually a parent corporation), and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own.'" Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111, 195 (2d Cir. 2010) (quoting Gartner v. Snyder, 607 F.2d 582, 586 (2d Cir. 1979) (applying New York law)), aff'd, 133 S. Ct.

---

[3] Garant-S argues that it is a non-sequitur to say it had an opportunity to declare excess value when Empire at first denied having ever taken possession of the cars. This argument is unavailing since the cars were stolen after Garant-S's shipment but before Empire's denials.

6

1659 (2013).[4] "In deciding whether to pierce the corporate veil, 'courts look to a variety of factors, including the intermingling of corporate and [shareholder] funds, undercapitalization of the corporation, failure to observe corporate formalities such as the maintenance of separate books and records, failure to pay dividends, insolvency at the time of a transaction, siphoning off of funds by the dominant shareholder, and the inactivity of other officers and directors.'" Id. (quoting Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 18 (2d Cir. 1996)). "The decision whether to pierce the corporate veil in a given instance depends on the particular facts and circumstances." Weinstein v. Willow Lake Corp., 262 A.D.2d 634, 635, 692 N.Y.S.2d 667, 667 (2d Dep't 1999).

Although there is evidence that Khitrinov was Empire's sole shareholder and that Empire never had a board of directors or, apparently, a company treasurer or secretary, it is nevertheless clear from the record that Empire is distinct from Khitrinov. There is no evidence whatsoever that Empire conducted Khitrinov's business as opposed to its own business. More specifically, Garant-S fails to point to any evidence of intermingling of personal and corporate funds, of failure to maintain adequate records, or of Empire conducting business for Khitrinov's personal benefit. The lack of corporate formalities that Garant-S presses here as key evidence of Empire being Khitrinov's alter ego is unpersuasive because, "with respect to small, privately-held corporations, 'the trappings of sophisticated corporate life are rarely present,' and we must avoid an over-rigid 'preoccupation with questions of structure, financial and accounting sophistication or dividend policy or history.'" Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d at 18 (quoting William Wrigley Jr. Co. v. Waters, 890 F.2d 594, 601 (2d Cir. 1989)).

We have considered Garant-S's remaining arguments and reject them as without merit. Accordingly, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

---

[4] The parties appear to assume that New York veil-piercing law applies because they cite only cases interpreting New York law. The court agrees because Empire is incorporated under New York law and, under New York choice of law rules, the state of incorporation's law governs veil piercing. See Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995).