ELIZABETH M. STEWART *v.* CENDANT
MOBILITY SERVICES CORPORATION
(SC 16913)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued May 22—officially released December 23, 2003

*A. Robert Fischer*, with whom were *William J. Anthony* and, on the brief, *James F. Shea*, for the appellant (defendant).

*Scott R. Lucas*, with whom was *Mary Alice S. Canaday*, for the appellee (plaintiff).

*Opinion*

PALMER, J. This appeal arises out of an action brought by the plaintiff, Elizabeth M. Stewart, against the defendant, Cendant Mobility Services Corporation (Cendant), her former employer, for damages resulting from Cendant's allegedly wrongful termination of her employment. Following a trial, a jury returned a verdict in part for the plaintiff, finding in her favor on her claims of promissory estoppel and negligent misrepresentation and awarding her $850,000 on those claims.[1] The trial court rendered judgment in accordance with the jury verdict from which Cendant appeals.[2] On appeal, Cendant claims that the evidence was insufficient to support the jury's verdict. We conclude that there was sufficient evidence from which the jury reasonably

---

[1] The jury found damages in the amount of $850,000 on each of the two claims. It is undisputed, however, that $850,000 comprises the award for both claims because each claim is predicated on the same relevant facts.

[2] The defendant appealed to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

could have found for the plaintiff on her promissory estoppel claim. Because the jury's award of $850,000 is sustainable on the basis of that claim alone,[3] we need not reach Cendant's claim that the evidence was insufficient to support the jury's verdict with respect to the plaintiff's negligent misrepresentation claim. Accordingly, we affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The plaintiff and her husband were employed by Cendant, which provides relocation services to domestic and international corporations and their employees. Among other things, Cendant assists its corporate clients in finding new homes for their relocating employees and in selling those employees' old homes. The plaintiff worked in the sales division and was considered one of the top producers in the relocation services industry. The plaintiff's husband was an executive in the operations division at Cendant.

In April, 1998, Cendant underwent a major corporate reorganization. Soon thereafter, Cendant terminated the plaintiff's husband from employment. At the time of her husband's termination, the plaintiff held the position of vice president of sales.

Because the plaintiff believed that her husband was likely to seek employment with one of Cendant's competitors in the relocation services field, she spoke with James Simon, Cendant's executive vice president of sales and the plaintiff's immediate supervisor, about the matter shortly after her husband's termination. The plaintiff explained to Simon that she was concerned about how her employment with Cendant might be affected if her husband ultimately accepted a position with a competitor. Simon told the plaintiff that she should not be concerned and that her husband's reemployment in the relocation services business would

---

[3] See footnote 1 of this opinion.

have no bearing on her employment with Cendant. Simon further represented to the plaintiff that Kevin Kelleher, Cendant's president and chief executive officer, also wished to assure the plaintiff that she had no reason to be concerned about her continued status as a highly valued employee in the event that her husband were to become associated with a competitor. On the basis of Simon's assurances, the plaintiff continued in her position with Cendant and did not pursue other employment opportunities.

On or about March 5, 1999, Cendant learned that the plaintiff's husband was performing consulting services for a competing firm. Upon obtaining this information, Cendant reduced the plaintiff's duties and limited her interaction with clients. Cendant also requested that the plaintiff verbally agree to the provisions of a document drafted by Cendant that purported to delineate her obligations to Cendant in relation to her husband's work on behalf of any competitor of Cendant. On June 11, 1999, Cendant allegedly terminated the plaintiff's employment when she declined to agree to the provisions of that document.

Thereafter, the plaintiff commenced this action against Cendant. In count one of her complaint, the plaintiff alleged that her conversation with Simon gave rise to an oral contract of employment and that her discharge by Cendant constituted a breach of that contract. In count two, the plaintiff claimed that her discharge violated an implied covenant of good faith and fair dealing. In count three, which is predicated on a theory of promissory estoppel, the plaintiff alleged that she had relied to her detriment on Simon's promise that her employment with Cendant would not be affected adversely by her husband's probable future employment with a competitor. In count four, the plaintiff asserted a claim of negligent misrepresentation, alleg-

ing that Simon's statements were false and that she had relied on those statements to her detriment.

Following a trial, the jury returned a verdict in favor of Cendant with respect to the plaintiff's claims of breach of contract and breach of an implied covenant of good faith and fair dealing. The jury returned a verdict in favor of the plaintiff with respect to her claims of promissory estoppel and negligent misrepresentation and awarded her $850,000.[4] Cendant filed motions to set aside the verdict and for judgment notwithstanding the verdict on the promissory estoppel and negligent misrepresentation claims, contending that the evidence was insufficient to support the jury's verdict in favor of the plaintiff on those claims. The trial court denied Cendant's postverdict motions and rendered judgment in accordance with the jury's verdict, from which Cendant appealed.

On appeal, Cendant challenges the trial court's denial of its motions to set aside the verdict and for judgment notwithstanding the verdict. Cendant renews its contention that the evidence was insufficient to support the jury's verdict with respect to the plaintiff's promissory estoppel claim. Cendant's contention is essentially twofold. First, Cendant claims that its purported promise to the plaintiff lacked the requisite clarity and definiteness

---

[4] We note that the plaintiff asserted five other claims in her complaint. The trial court granted Cendant's motion for summary judgment in part and rendered judgment thereon in favor of Cendant with respect to two of those claims. With respect to two other claims, the trial court granted Cendant's motion for a directed verdict. The plaintiff has not appealed from that part of the trial court's judgment rendered in accordance with the disposition of the foregoing claims. With respect to the last of these five claims, namely, that Cendant had failed to pay the plaintiff wages in violation of General Statutes § 31-72, the jury returned a verdict in favor of the plaintiff, and the trial court rendered judgment thereon in favor of the plaintiff. Cendant has not appealed from that part of the judgment relating to the plaintiff's claim under § 31-72. Thus, none of the plaintiff's five other claims or the balance of the award that is unrelated to the plaintiff's claims of promissory estoppel and negligent misrepresentation is the subject of this appeal.

necessary to establish promissory estoppel. Second, Cendant claims that the plaintiff failed to present evidence sufficient to establish that she had relied to her detriment on any such promise. We reject both of these claims and, therefore, affirm the judgment of the trial court inasmuch as the jury award of $850,000 is sustainable on the basis of the plaintiff's promissory estoppel claim. Because the jury awarded the plaintiff $850,000 in damages on each of her claims of promissory estoppel and negligent misrepresentation; see footnote 1 of this opinion; we need not address Cendant's claim that the evidence was insufficient to support the jury's verdict with respect to the plaintiff's negligent misrepresentation claim.

Before addressing the merits of Cendant's claims, we set forth the applicable standard of review. "The standard for reviewing the denial of motions to set aside the verdict and for judgment notwithstanding the verdict on evidentiary grounds is clear. Our review of the trial court's [decision to deny the motions] requires us to consider the evidence in the light most favorable to the prevailing party, according particular weight to the congruence of the judgment of the trial judge and the jury, who saw the witnesses and heard their testimony. . . . The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached [its] conclusion." (Internal quotation marks omitted.) *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 277, 698 A.2d 838 (1997). With this standard of review in mind, we turn to Cendant's challenge to the evidentiary sufficiency of the plaintiff's promissory estoppel claim.

## I

Cendant first contends that the jury reasonably could not have found that Simon's representations to the plaintiff were sufficiently clear and definite to consti-

tute a promise for purposes of a claim of promissory estoppel. We disagree.

The following additional evidence and procedural history are necessary to our resolution of this issue. On direct examination, the plaintiff testified that, after her husband was fired, she became concerned that his termination and likely reemployment in the relocation services industry adversely would affect her employment with Cendant. The plaintiff testified that she "specifically asked [Simon] what would happen [to her] if [her husband competed] in the industry." According to the plaintiff, Simon replied that "he had absolutely no concerns about [her husband] entering the marketplace." The plaintiff also testified that Simon told her that "he had tremendous respect for both [the plaintiff] and [the plaintiff's husband and] that [they] had a lot of integrity." The plaintiff testified further that Simon told her that "[h]e had trust and faith in [her] and in [the plaintiff's husband] and he knew that [they] would be able to keep [their] lives separate and [that] he had absolutely no concerns about [her husband] entering the marketplace." According to the plaintiff, Simon "said that he would talk to [Kelleher] on her behalf . . . [and] assured [her] that this was not going to be a problem and that [she] was a highly valued employee and there was nothing to worry about."

The plaintiff further explained that Simon thereafter reported to her that "he had spoken to [Kelleher] about [her] concerns and that [Kelleher] wanted [Simon] to assure [her] that [she] was very highly valued, that [she] was an integral part of the company, [that] he had tremendous respect for [her] integrity and [that] there were no problems whatsoever with [the plaintiff] continuing the job in the event [that her husband] competed." On cross-examination, the plaintiff acknowledged that when she and Simon spoke, they were discussing a hypothetical future occurrence because she

was not certain whether her husband would join another relocation services company. The plaintiff further testified on cross-examination that she did not believe that she was negotiating an employment contract when she spoke with Simon.

At the conclusion of the court's instructions to the jury, the jury was provided with a special verdict form containing interrogatories relating to each of the plaintiff's claims. With respect to the plaintiff's breach of contract claim, the jury was asked, inter alia, whether it found that Cendant had "made a definite offer sufficient to form a contractual agreement with the plaintiff . . . ." The jury answered no. With respect to the plaintiff's promissory estoppel claim, the jury was asked, inter alia, whether it found that Cendant had "made a clear, definite promise to [the plaintiff] . . . upon which it should have expected she would rely . . . ." The jury responded in the affirmative.

The following legal principles govern our analysis of Cendant's claim. "Under the law of contract, a promise is generally not enforceable unless it is supported by consideration. . . . This court has recognized, however, the development of liability in contract for action induced by reliance upon a promise, despite the absence of common-law consideration normally required to bind a promisor . . . . Section 90 of the Restatement [(Second) of Contracts] states that under the doctrine of promissory estoppel [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. [1 Restatement (Second), Contracts § 90, p. 242 (1981).] A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance. Thus, a

promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all." (Citations omitted; internal quotation marks omitted.) *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School*, 202 Conn. 206, 213, 520 A.2d 217 (1987).

Although the promise must be clear and definite, it need not be the equivalent of an offer to enter into a contract because "[t]he prerequisite for . . . application [of the doctrine of promissory estoppel] is a *promise* and not a bargain and *not* an *offer*." (Emphasis added.) 3 A. Corbin, Contracts (Rev. Ed. 1996) § 8.9, p. 29; cf. *Suffield Development Associates Ltd. Partnership* v. *Society for Savings*, 243 Conn. 832, 845–46, 708 A.2d 1361 (1998) (concluding that contract did not exist because agreement was not sufficiently definite and remanding case for new trial to permit consideration by fact finder of promissory estoppel claim predicated on same facts). This, of course, is consistent with the principle that, although "[a]n offer is nearly always a promise"; 1 E. Farnsworth, Contracts (2d Ed. 1998) § 3.3, p. 188; all promises are not offers. See 1 Restatement (Second), supra, § 24, comment (b), p. 72 ("[w]hether or not a proposal is a promise, it is not an offer unless it specifies a promise or performance by the offeree as the price or consideration to be given by him").

Additionally, the promise must reflect a present intent to commit as distinguished from a mere statement of intent to contract in the future. See *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School*, supra, 202 Conn. 214–15. "[A] mere expression of intention, hope, desire, or opinion, which shows no real commitment, cannot be expected to induce reliance"; 3 A. Corbin, Contracts, supra, § 8.9, pp. 29–30; and, therefore, is not sufficiently promissory. The requirements of clarity and definiteness are the determinative

factors in deciding whether the statements are indeed expressions of commitment as opposed to expressions of intention, hope, desire or opinion. See *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School*, supra, 214–15. Finally, whether a representation rises to the level of a promise is generally a question of fact, to be determined in light of the circumstances under which the representation was made. *Torosyan* v. *Boehringer Ingelheim Pharmaceuticals, Inc.*, 234 Conn. 1, 17 n.6, 662 A.2d 89 (1995).

Applying the foregoing principles, we conclude that there was sufficient evidence to support the jury's finding that Simon's representations to the plaintiff were sufficiently clear and definite to constitute a promise that her employment with Cendant would not be affected adversely if her husband subsequently secured employment with a competing relocation services firm. The plaintiff testified that: (1) she had approached Simon because she was concerned that her husband's employment with a competitor would have a negative effect on her employment with Cendant; (2) she expressed that concern in plain terms to Simon; and (3) Simon responded in equally unambiguous terms, in his own capacity and on behalf of Kelleher, that the plaintiff had no need to worry because her husband's future employment with a competitor would pose "no problems whatsoever" for her. On the basis of this testimony, the jury reasonably could have found that Simon's representations to the plaintiff constituted a clear and definite promise that her position with Cendant would not be affected adversely if her husband were to secure employment with a competing firm.

Relying primarily on our decision in *D'Ulisse-Cupo*, Cendant contends that, under our law of promissory estoppel, all promises in the employer-employee context, to be actionable, must contain the standard material terms of a contract of employment and clearly

reflect an intent by the promisor to undertake conventional contractual liability.[5] In other words, Cendant contends that any such promise must contain all of the elements of an offer to enter into a contract. We conclude that our holding in *D'Ulisse-Cupo* is not so broad.

In *D'Ulisse-Cupo*, the plaintiff, Maria D'Ulisse-Cupo, brought an action against the board of directors (board) and principal of Notre Dame High School (school) in West Haven. *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School*, supra, 202 Conn. 207. The board declined to offer D'Ulisse-Cupo a new contract after her prior contract to teach at the school had expired. Id., 208–209. D'Ulisse-Cupo alleged that authorized representatives of the board had made certain representations to her prior to the expiration of her teaching contract that suggested that she would be offered a new contract. Id., 208, 214. D'Ulisse-Cupo alleged further that she relied on those representations to her detriment. Id., 209.

We concluded that the "representations [did] not invoke a cause of action for promissory estoppel because they [were] neither sufficiently promissory nor sufficiently definite to support contractual liability." Id., 214. We explained that the "representations manifested no present intention on the part of the [board] to undertake immediate contractual obligations to [D'Ulisse-Cupo]"; id., 214–15; and that "none of the representations contained any of the material terms that would be essential to an employment contract, such as terms regarding the duration and conditions of [D'Ulisse-Cupo's] employment . . . and her salary and fringe benefits." Id., 215. Finally, we concluded that, "[a]t most, the [board] made representations to [D'Ulisse-

---

[5] We note that at least one commentator also has construed *D'Ulisse-Cupo* in such a manner. See 3 A. Corbin, supra, § 8.12, p. 99.

Cupo] concerning the expectation of a future contract, but . . . stopped short of making [D'Ulisse-Cupo] a definite promise of employment on which she could reasonably have relied." Id.

Although we acknowledge that certain language in *D'Ulisse-Cupo* might suggest that, for purposes of a claim of promissory estoppel, the promise upon which the promisee relies must be no less specific and definite than an offer to enter into a contract, we reject Cendant's claim urging that interpretation. Our observations in *D'Ulisse-Cupo* that the representations did not contain the material terms of a new employment contract and otherwise did not reflect an intent by the board to undertake immediate contractual liability were necessary to our determination of whether, in circumstances involving an alleged promise to rehire a employee under contract, the representations constituted a promise to commit or mere expressions of a future intent to enter into a contract. See id., 214–15. In other words, because D'Ulisse-Cupo alleged that she had been promised a contract of employment, our consideration of whether the contract terms were part of that purported promise and whether the representations reflected an intention to bind the board to a future contract was central to our resolution of D'Ulisse-Cupo's claim that those representations were sufficiently clear and definite such that her reliance on them was reasonable. Thus, when *D'Ulisse-Cupo* is viewed in the context of the particular claim addressed in that case, it is apparent that the language upon which Cendant relies is properly understood as explaining why the representations regarding a future employment contract were insufficiently promissory and definite to be actionable, and not properly understood as indicating that, for purposes of the doctrine of promissory estoppel, any promise relating to employment must be the

equivalent of an offer to enter into a contract.[6] Cf. *Toro-syan* v. *Boehringer Ingelheim Pharmaceuticals, Inc.*, supra, 234 Conn. 17 n.6 ("[n]otwithstanding the broad language of *D'Ulisse-Cupo* . . . the question of whether statements are promissory should be considered as a question of fact").

Finally, the present case is readily distinguishable from *D'Ulisse-Cupo*. Although Simon's representations related to the plaintiff's employment, they were far more limited in scope than the representations at issue in *D'Ulisse-Cupo*. Simon promised the plaintiff only that her employment would not be affected adversely by her husband's future employment with a competitor of Cendant. The plaintiff otherwise remained an at-will employee subject to termination at Cendant's sole discretion. Consequently, the issue of whether Simon's representations were sufficiently clear and definite to constitute a promise upon which the plaintiff reasonably could have relied is significantly narrower than the issue that was presented in *D'Ulisse-Cupo*, namely, whether the representations of the representatives of the school board constituted a promise of an entirely new employment contract even when those representations did not contain terms and conditions that necessarily comprise any such contractual arrangement. See *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School*, supra, 202 Conn. 214–15.

Cendant further contends that the jury's finding, as reflected in its response to an interrogatory relating to the plaintiff's breach of contract claim, that there was no *offer* for purposes of that claim is inconsistent with its finding that there was a *promise* for purposes of the

---

[6] We note, in addition, that no case or commentator cited in our discussion of promissory estoppel in *D'Ulisse-Cupo* suggests or otherwise intimates that, for purposes of the doctrine of promissory estoppel, the promise upon which the promisee relies must be equivalent to an offer to enter into a contract.

plaintiff's promissory estoppel claim. Cendant contends, therefore, that the jury's finding of a promise cannot stand. This claim is without merit.

Although "in civil cases when a verdict rests upon a factual finding contradictory to another finding of the same issue by the trier the judgment cannot stand"; *Magnan* v. *Anaconda Industries, Inc.*, 193 Conn. 558, 577, 479 A.2d 781 (1984); the jury's findings in the present case are not inconsistent. As we have explained, a promise need not be the functional equivalent of an offer to enter into a contract for it to support a claim of promissory estoppel.[7] See 3 A. Corbin, supra, § 8.9, p. 29. Thus, the jury reasonably could have concluded *both* that Simon's representations constituted a promise upon which the plaintiff reasonably could and did rely *and* that his representations were not an expression of the terms of an employment contract that Cendant was offering to the plaintiff. Consequently, the jury's finding that Cendant did not make an offer to enter into a contract with the plaintiff is not inconsistent with its finding that Cendant had promised the plaintiff that her employment would not be affected adversely if her husband were to accept a position with a competitor.[8]

---

[7] Indeed, the trial court's jury instructions were consistent with this distinction. Specifically, the court defined an "offer" as "a clear expression of terms under which a contract will be entered into . . . ." By contrast, the court defined a "promise" as a "clear and definite" statement "upon which Cendant . . . should have expected the plaintiff to rely . . . ."

[8] Cendant also contends that Simon's representations were not sufficiently clear and definite inasmuch as the plaintiff did not believe that she was negotiating an employment contract and inasmuch as Simon's representations related to a hypothetical future event, namely, her husband's acceptance of a position with another relocation services firm. This claim lacks merit. First, the fact that the plaintiff did not believe that she was negotiating an actual employment contract with Simon is not inconsistent with the finding that Simon's more limited representation to her was sufficiently clear and definite such that the plaintiff reasonably and foreseeably would rely on it. Moreover, although Simon's representations concerned a hypothetical future event, his representations nevertheless reflected Cendant's commitment to refrain from taking adverse action against the plaintiff even though that commitment was contingent on the plaintiff's husband's reem-

## II

The defendant next claims that the evidence was insufficient to establish that the plaintiff detrimentally relied on Simon's representations. We also reject this claim.

The following additional facts are necessary to our disposition of this claim. As we previously have noted, the plaintiff testified on direct examination that she had approached Simon because she wanted to know whether, in light of her husband's likely future employment with a competing relocation services firm, she should stay at Cendant or seek other opportunities within the industry. After Simon assured her that she would suffer no adverse consequences in the event that her husband were to accept employment with a competitor, the plaintiff decided to remain at Cendant and "did not pursue other employment opportunities . . . ." The plaintiff testified during cross-examination, however, that, if Simon had told her that her husband's employment with another relocation services firm would pose a problem, she was not sure "what [she] would have done." The plaintiff also testified that when Simon made his representations to her, she was not investigating other employment opportunities. Additionally, the plaintiff acknowledged that she was an at-will employee and, therefore, subject to discharge at any time.

The plaintiff also adduced evidence that she was one of a relatively small number of highly talented salespeople in the relocation services industry. Indeed, Kelleher testified that the plaintiff would be regarded as a "val-

ployment in the relocation services field. Consequently, those representations were sufficiently clear and definite that they reasonably and foreseeably could have been expected to induce reliance. See 3 A. Corbin, supra, § 8.9, p. 29 ("[s]tatements of present commitment to do or refrain from doing something in the future reasonably can be expected to induce reliance").

ued asset" both within Cendant and in the industry on the basis of her productivity. Simon testified that such salespeople have no difficulty finding employment in the relocation services field. According to Simon, salespeople with the plaintiff's credentials "can walk in virtually anywhere" and receive a job offer.

In addition, offers to top performers in the relocation services industry typically include a signing bonus equivalent to some or all of the value of the employee's "pipeline," the industry term for the estimated total commissions due a salesperson, at a specific point in time, on the basis of consummated sales for which the company has not yet been paid in full. Because salespeople do not receive pipeline commissions if they leave a company to join a competitor before the company is paid by the client, signing bonuses are used as a recruitment tool by relocation service companies to induce salespeople employed by other companies to forgo their pipeline commissions and join the recruiting company. Although there are numerous salespeople who, like the plaintiff, do not receive accrued but uncollected commissions, those salespeople, in contrast to salespeople who are recruited by a competitor, are not sufficiently marketable to command a signing bonus. Finally, evidence adduced at trial established that the approximate value of the plaintiff's pipeline when she allegedly was terminated was $812,700,[9] a sum that she never was paid.

To succeed on a claim of promissory estoppel, the party seeking to invoke the doctrine must have relied on the other party's promise. *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School*, supra, 202 Conn. 213. That reliance, of course, may take the form of action or forbearance. Id. Nevertheless, the asserted

[9] The plaintiff also testified that, in 1998, her last full year of employment with Cendant, her income was approximately $630,000.

reliance, regardless of its form, must result in a detrimental change in the plaintiff's position. 3 A. Corbin, supra, § 8.9, p. 30 ("[T]he action or forbearance must amount to a detrimental change of position. The abandonment of a peppercorn or the turning over of the hand will not be enough."); see also *W.* v. *W.*, 256 Conn. 657, 661, 779 A.2d 716 (2001) (promisee "must actually change his position or do something to his injury which he otherwise would not have done"). Thus, "[t]o 'rely,' in the law of promissory estoppel, is not merely to do something in response to the inducement offered by the promise. There must be a cost to the promisee of doing it." *Cosgrove* v. *Bartolotta*, 150 F.3d 729, 733 (7th Cir. 1998).

Moreover, "[i]f the claimed reliance consists of the promisee's forbearance rather than an affirmative action, proof that this forbearance was induced by the promise requires a showing that the promisee *could have* acted." (Emphasis added.) 1 E. Farnsworth, supra, § 2.19, p. 164. Implicit in this principle is the requirement of proof that the plaintiff actually *would have acted* in the absence of the promise. Cf. *Middlesex Mutual Assurance Co.* v. *Walsh*, 218 Conn. 681, 699–700, 590 A.2d 957 (1991) (no detrimental reliance when party asserting doctrine of equitable estoppel failed to prove that action would have been different if promisor's statement were different).

In the present case, the plaintiff claimed that she relied on Simon's representations by forgoing other employment opportunities that would have resulted in a signing bonus approximately equivalent to her pipeline. Cendant contends that the plaintiff failed to adduce sufficient evidence to establish that she: (1) could have obtained such other employment; (2) would have sought employment elsewhere if Simon had told her that her position at Cendant would be affected adversely if her husband accepted a position with a

competing firm; and (3) was not harmed by continuing as an employee of Cendant even if she did so in reliance on Simon's representations. We disagree with each of these contentions.

First, with respect to Cendant's claim that the evidence was inadequate to establish that the plaintiff could have secured a sales position with another relocation services firm, Simon testified that talented salespeople in the relocation services industry—and it was undisputed that the plaintiff was such a salesperson—frequently obtained such positions. Although, as Cendant notes, the plaintiff, herself, testified that she was unaware that any of those positions were available at the time she would have been seeking such a position, the jury nevertheless reasonably could have found, on the basis of Simon's testimony, that the plaintiff likely could have secured such a position if she had sought to do so.

With respect to the issue of whether the plaintiff *would* have departed Cendant if she had not received Simon's assurances, the plaintiff testified that she approached Simon about her husband's likely future employment with a competitor because she needed to decide whether to stay with Cendant or to look for a position elsewhere. The plaintiff also indicated that she elected to stay at Cendant rather than to seek other employment because of Simon's representations that her position at Cendant would not be affected negatively in the event that her husband secured employment with a competing firm. Although the plaintiff also testified that she was unsure what she would have done if Simon had not made those assurances, it was within the province of the jury to resolve any possible inconsistencies in the plaintiff's testimony in a manner favorable to the plaintiff. E.g., *State* v. *Meehan*, 260 Conn. 372, 381, 796 A.2d 1191 (2002) ("[i]t is axiomatic that evidentiary inconsistencies are for the jury to resolve, and it is

within the province of the jury to believe all or only part of a witness' testimony"); *Parker* v. *Slosberg*, 73 Conn. App. 254, 265, 808 A.2d 351 (2002) ("jury [is] free to credit one version of events over the other, even from the same witness"). Thus, the jury reasonably could have found that the plaintiff would have left Cendant if Simon had not assured her as he did.

Finally, Cendant contends that the plaintiff suffered no harm by opting not to seek employment elsewhere after she had spoken with Simon about her husband's likely future employment with a competitor. We disagree. In remaining at Cendant, the plaintiff not only abandoned any opportunity to secure a position with another relocation services company, she also forwent a signing bonus that the jury reasonably could have found approximated the value of her pipeline. Accordingly, we conclude that the evidence was sufficient to warrant the jury's finding that that the plaintiff reasonably relied on Simon's representations to her financial detriment.[10]

The judgment is affirmed.

In this opinion the other justices concurred.

---

[10] Cendant maintains that any such reliance was unreasonable due to the fact that the plaintiff, herself, conceded that she was an at-will employee and, consequently, could be terminated at any time. This claim also lacks merit. Although the plaintiff acknowledged her status as an at-will employee, she also testified repeatedly, clearly and unwaveringly that, on the basis of Simon's representations, she believed that Cendant could not and would not terminate her if her husband subsequently secured employment with a competitor. Thus, the evidence supported the conclusion that Cendant could have terminated the plaintiff for any reason *except* her husband's employment with a competing firm.