**Gloria SPARVERI, Plaintiff,**

v.

**TOWN OF ROCKY HILL, Defendant.**

**No. 3:05CV00376(DJS).**

United States District Court,
D. Connecticut.

Sept. 30, 2008.

Thomas G. Moukawsher, Moukawsher & Walsh, Hartford, CT, for Plaintiff.

Morris R. Borea, Robbie T. Gerrick, Rome McGuigan Sabanosh, P.C., Hartford, CT, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

DOMINIC J. SQUATRITO, District Judge.

The plaintiff, Gloria Sparveri ("Sparveri"), brings this action against her former employer, the Town of Rocky Hill ("Rocky Hill"), alleging that Rocky Hill breached the terms of its pension plan with her.[1] Rocky Hill has filed a motion for summary judgment (dkt.# 29) pursu-

ant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P."), arguing that there exists no issue of material fact and that it is entitled to judgment as a matter of law. For the reasons that follow, Rocky Hill's motion for summary judgment (dkt.# 29) is **DENIED.**

## I. FACTS

In 1988, Sparveri began her career with Rocky Hill as a volunteer in the Rocky Hill Police Department's Crisis Intervention Unit ("CIU"). According to Sparveri, this volunteer position required her to be on-call twenty-four hours a day, seven days a week. Then, in 1993, Rocky Hill hired Sparveri on a part-time basis as an independent contractor, giving her the title of CIU Coordinator/EAP[2]/Title VII Officer. Sparveri's responsibilities at this position included providing on-call services for the CIU, conducting internal affairs and Title VII investigations, hiring all sworn police officers, administering all pre-employment testing, and acting as a certified law enforcement instructor and trainer. In 1996, Rocky Hill expanded her employment as an independent contractor to a full-time basis, giving her additional human resources-related responsibilities.

In July 1997, Rocky Hill hired Sparveri as a full-time regular employee with the title of Director of Personnel/EAP/CIU. At this time, she became eligible to participate in Rocky Hill's Pension Plan for Regular Employees ("the Plan"), for which the Town Manager is the administrator and trustee. Sparveri began making contribu-

---

1. Sparveri's complaint also contained a claim brought pursuant to 42 U.S.C. § 1983, alleging a violation of her Fourteenth Amendment right to not be deprived of property without due process of law. On October 18, 2005, the Honorable Janet C. Hall, to whom this case was initially assigned, dismissed the due process claim. See Sparveri v. Town of Rocky

*Hill,* 396 F.Supp.2d 214 (D.Conn.2005). After Rocky Hill filed its summary judgment motion, this case was transferred to the undersigned.

2. "EAP" is short for "Employee Assistance Program."

tions toward her pension in September 1998.

On September 13, 2000, Barbara Gilbert ("Gilbert"), the Assistant Town Manager and Town Clerk, sent to the Town Manager, Nicholas A. LaRosa ("LaRosa") a memorandum regarding a reassessment of Sparveri's benefits. In the memorandum, Gilbert sought to have Sparveri's hire date adjusted to May 1, 1991, thus giving Sparveri credit for services performed prior to being hired as a full-time regular employee. Gilbert noted in the memorandum that this type of adjustment, which had been given to other Rocky Hill employees, would affect Sparveri's vacation, longevity, and retirement dates. In response to this, LaRosa wrote "OK N. LaRosa 9/20/00" on the memorandum. Sparveri asserts that, after LaRosa's approval of the adjustment, Rocky Hill began carrying out the memorandum's terms by increasing her vacation time, reducing her medical insurance co-pay, and paying her longevity checks.

In June 2003, as Sparveri continued her employment with Rocky Hill as Personnel Director, Gilbert informed Sparveri that her employment with Rocky Hill was going to be terminated.[3] As a result of this notification, Sparveri entered into a Settlement Agreement ("the Agreement") with Rocky Hill on July 1, 2003, whereby she resigned from her position in exchange for, among other things, six months of severance pay and twelve months of medical and dental insurance. (Dkt. # 36–14 ¶¶ 1–2.) Pursuant to the Agreement, Sparveri agreed to release and discharge Rocky Hill "from any and all claims, known and unknown, Sparveri has or may have against the Town of Rocky Hill as of the date of execution of this Agreement...." (Id. ¶ 4.) The Agreement further reads that "Rocky Hill also agrees to provide the additional consideration those items due per the Personnel Rules as contained in **Attachment A**." (Id. ¶ 2.) One of the items listed in Attachment A is the "Withdrawal from Pension plan in accordance with plan. (at a later date )"[4] (Id., Attachment A ¶ 7.) Sparveri's last day of employment with Rocky Hill was July 4, 2003.

On March 24, 2004, Sparveri asked Rocky Hill how to withdraw her pension contributions under the Plan. John Mehr ("Mehr"), Rocky Hill's Finance Director, contacted Beth Hajek ("Hajek"), an Associate Accountant for Rocky Hill, to provide him with the amount of Sparveri's contribution to her pension plus the amount of interest paid on that contribution by the Plan. Hajek informed Mehr that the balance owed to Sparveri was $9,278.43. Hajek also prepared a pension estimate regarding the monthly benefit that Sparveri could receive if she did not withdraw from the Plan. This estimate was based on the July 1997 hire date, not the May 1, 1991 adjusted hire date as provided in Gilbert's memorandum.

Mehr subsequently sent an email to Sparveri informing her of the $9,278.43 balance. He also mailed to Sparveri a Summary Plan Description for the Plan and forms that needed to be signed and returned to Rocky Hill in order for her to withdraw her pension contributions. Sparveri did not sign and return the forms, claiming that the monthly pension estimate was incorrect because it was based on the July 1997 hire date. Because of her dispute with Rocky Hill over the pension, Sparveri filed this action.

## II. DISCUSSION

Rocky Hill moves for summary judgment, arguing that: (1) the Agreement

---

**3.** In the memoranda of law, neither party provides specifics as to why Sparveri's employment ended.

**4.** The "(at a later date)" language was handwritten, presumably by Gilbert.

bars Sparveri from pursuing her claim; (2) Sparveri's pension benefit was calculated correctly; and (3) because the September 13, 2000 memorandum, which adjusted Sparveri's hire date, was not supported by consideration, it is an unenforceable contract. Sparveri argues that the court should deny the summary judgment motion because Rocky Hill's arguments lack merit. The court shall discuss the parties' arguments seriatim.

## A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Summary judgment is appropriate if, after discovery, the nonmoving party "failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *Am. Int'l Group v. London Am. Int'l Corp.*, 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975)).

A dispute concerning a material fact is genuine " 'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

## B. RELEASE OF CLAIM

■ Rocky Hill first argues that, under the terms of the Agreement, Sparveri is barred from pursuing her claim here. Specifically, Rocky Hill maintains that the portion of the Agreement whereby Sparveri agreed to release Rocky Hill "from any and all claims" she has or may have against Rocky Hill as of the date of Agreement's execution precludes her claim.[5]

■ The Agreement provides that it is governed in accordance with the laws of the State of Connecticut. (Dkt. # 36–14 ¶ 7.) Connecticut courts are "guided by the well established principle that ... a stipulation of the parties is to be regarded and construed as a contract." *HLO Land Ownership Assocs. Ltd. P'ship v. City of Hartford*, 248 Conn. 350, 356, 727 A.2d 1260 (1999) (internal quotation marks omitted); *see Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir.2005) ("A settlement agreement is a contract that is interpreted according to general principles of contract law.") (applying Connecticut law). "[I]n a contract dispute, summary judgment may be granted only where the language of the contract is unambiguous." *Bouzo v. Citibank, N.A.*, 96 F.3d 51, 58 (2d Cir.1996) (internal quotation marks omitted). "Where the language of the contract

---

**5.** The court notes that the Agreement's release language would not preclude Sparveri from claiming that Rocky Hill violated the Agreement itself, nor would it preclude Sparveri from claiming that, after the execution of the Agreement, Rocky Hill violated the Plan by not paying money owed to her under the Plan.

is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . ." *HLO Land Ownership Assocs. Ltd. P'ship,* 248 Conn. at 357, 727 A.2d 1260 (internal quotation marks omitted). On the other hand, "[i]f the language is susceptible to different reasonable interpretations, and where there is relevant extrinsic evidence of the parties' actual intent, then the contract's meaning becomes an issue of fact precluding summary judgment." *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan,* 7 F.3d 1091, 1094 (2d Cir.1993) (internal quotation marks omitted).

The court does not believe that the relevant language in the Agreement is clear and unambiguous in its meaning. According to Rocky Hill, Sparveri, in Attachment A of the Agreement, "agreed to withdraw from the Town Pension Plan in accordance with the terms of the Plan and was releasing the Town from any other claims." (Dkt.# 30, p. 9.) As the court reads the Agreement (specifically, Paragraph 2 of the Agreement), Attachment A lists those items that Rocky Hill was to provide as consideration for Sparveri entering into the Agreement. That is to say, Attachment A enumerates the consideration provided by Rocky Hill, not Sparveri. Thus, with regard to Attachment A, it is not clear to the court that Sparveri agreed to anything other than to accept as consideration the items listed in Attachment A.

Given the above, the court does not believe that the language of the Agreement clearly supports Rocky Hill's argument.

Paragraph Two of the Agreement provides that Rocky Hill would "provide the additional consideration those items . . . as contained in ***Attachment A.***" (Dkt. # 30–14 ¶ 2.) The relevant part of Attachment A reads as follows: "Withdrawal from Pension plan in accordance with plan. (*at a later date* )". (*Id.,* Attachment A ¶ 7.) Read together, Paragraph Two and Attachment A say that Rocky Hill would provide as consideration "withdrawal" from the Plan. If, in this context, "withdrawal" means "ceasing to participate in an activity," the Agreement makes no sense because such a "withdrawal" would have to be provided by Sparveri.

Rocky Hill asks the court to read the relevant portion of Attachment A as Sparveri providing for the cessation of her participation in the Plan. At the outset, though, such a reading would create an inconsistency in the Agreement. Attachment A lists those things (e.g., pink slip, letter of recommendation, vacation time, and payment for unused sick time) Rocky Hill was to provide to Sparveri. Rocky Hill now asks the court to read one portion of Attachment A in a way that is inconsistent with the other portions of Attachment A. The court sees no reason for this.[6]

■ Moreover, even if the court were to read that portion of Attachment A as providing for Sparveri's "withdrawal" from the Plan, there is a disagreement on how to interpret the term "withdrawal." As noted above, "withdrawal" can mean "ceasing to participate in an activity." On the other hand, "withdrawal" can also mean "the act of taking out money or other

---

**6.** The court would like to point out that, in Connecticut, "the language of a contract is typically construed most strongly against the party whose language it is and for whose benefit it was inserted." *Sturman v. Socha,* 191 Conn. 1, 9, 463 A.2d 527 (1983); *see Ranciato v. Nolan,* No. CV970401729S, 2002 WL 313892, at *3 (Conn.Super.Ct. Feb.7, 2002) (stating that Connecticut has "long standing doctrines which provide that contracts are to be construed narrowly and against the drafter"). There is no dispute that Rocky Hill drafted the Agreement.

capital." Rocky Hill could have read Attachment A as providing for the cessation of Sparveri's participation in the Plan, while Sparveri could have read Attachment A as allowing her to take out her pension money "in accordance with" the Plan. Given these two potential meanings, the court does not see how it can grant summary judgment in favor of Rocky Hill on this point when, in Connecticut, "[i]t is generally accepted ... that when two ... meanings may fairly be given to language in a contract, the language is to be construed against the one who drew it...." *Sturman*, 191 Conn. at 9, 463 A.2d 527 (1983) (internal citation omitted). The court is especially mindful of this principle here because Sparveri did not have the assistance of legal counsel when she signed the Agreement.

The court also points out that Rocky Hill did not help clarify any ambiguities in the Agreement. Specifically, after the parties signed the Agreement, Sparveri sent an email to Mehr requesting information on how to receive her pension contributions. In reply, Mehr not only provided Sparveri with a balance of her contributions, he also relayed the following: "For your information, you do qualify for a pension payment. I will enclose a copy of the Pension Plan Retirement Application with a calculation of your estimate monthly retirement benefit." (Dkt.36–15.) Rocky Hill did, in fact, create a pension estimate for Sparveri. (Dkt.# 36–22.) In the court's view, this exchange between Sparveri and Mehr shows that Rocky Hill's own Finance Director thought that Sparveri could receive her pension benefits, which Rocky Hill now claims are precluded by the Agreement. Given these above-mentioned uncertainties,[7] the court cannot say that Sparveri gave up her claim by signing the Agreement. On this issue, Rocky Hill's motion for summary judgment **(dkt.# 29)** is **DENIED.**

## C. PENSION CALCULATION/HIRE DATE

■ Rocky Hill next argues that (1) its pension calculation is correct; and (2) Sparveri is not entitled to an adjusted hire date. The court considers these arguments together. Assuming she is entitled to pension payments, the question is simply how much should her payments be. The answer to this question depends on whether Sparveri is entitled to an adjusted hire date. Rocky Hill claims that she is not entitled to the earlier hire date because the September 13, 2000 memorandum was not supported by consideration, and thus is an unenforceable contract. Sparveri counters that the memorandum was supported by consideration, and that Rocky Hill is estopped from repudiating the promise made in the memorandum.

To begin with, the court does not believe that the memorandum in question can constitute a contract between Sparveri and Rocky Hill. As every first-year law student knows, the formation of a contract requires an offer, an acceptance of the offer, and consideration. Based upon what the court can discern from the record, Gilbert sent the memorandum regarding a reassessment of Sparveri's benefits to LaRosa. In response to this, LaRosa wrote "OK N.

---

**7.** To the court, there appears to be a question of fact regarding 7 Sparveri's actual intent. Sparveri represents that, prior to signing the Agreement, Rocky Hill paid her $80,000 per annum. There is no indication that Rocky Hill decided to terminate Sparveri's employment for just cause. It seem counterintuitive, then, that she would accept the $55,000 severance payment, which was approximately 30% less than her annual salary, and at the same time give up her pension benefits. Under normal circumstances, a person *compos mentis* does not act against her own interests.

LaRosa 9/20/00" on the memorandum. Other than receiving a carbon copy of the memorandum, there is no indication that Sparveri participated in this exchange between Gilbert and LaRosa. There is no indication that Sparveri told Gilbert to ask LaRosa about adjusting the hire date. There is no indication of an "offer" that Sparveri "accepted." There is no indication that Sparveri and Rocky Hill bargained for anything. Given that the formation of a contract requires an offer, acceptance, and consideration, the court fails to see how a contract was formed here.

▌ The lack of a contract, however, does not extinguish Sparveri's claim. "The doctrine of promissory estoppel serves as an alternative basis to enforce a contract in the absence of competing common-law considerations." *Torringford Farms Ass'n, Inc. v. City of Torrington*, 75 Conn.App. 570, 576, 816 A.2d 736 (2003). "[U]nder the doctrine of promissory estoppel [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Stewart v. Cendant Mobility Servs. Corp.*, 267 Conn. 96, 104, 837 A.2d 736 (2003) (internal quotation marks omitted). "A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance." *Id.* Furthermore, "[a]lthough the promise must be clear and definite, it need not be the equivalent of an offer to enter into a contract

because [t]he prerequisite for ... application [of the doctrine of promissory estoppel] is a promise and not a bargain and not an offer." *Id.* at 105, 837 A.2d 736 (internal quotation marks omitted). "Additionally, the promise must reflect a present intent to commit as distinguished from a mere statement of intent to contract in the future." *Id.* "[W]hether a representation rises to the level of a promise is generally a question of fact, to be determined in light of the circumstances under which the representation was made." *Id.* at 106, 837 A.2d 736.

Applying the foregoing principles, the court cannot grant summary judgment in favor of Rocky Hill. There is no dispute that, in the memorandum, Gilbert advocated for adjusting Sparveri's hire date. LaRosa wrote "OK" on the memorandum, and, according to Sparveri, subsequently told her that he had agreed to adjust the hire date. In the court's view, a reasonable jury could consider this a clear and definite promise. Furthermore, in the court's view, a reasonable jury could find that, as a result of such a promise, Rocky Hill reasonably should have expected to induce action or forbearance on the part of Sparveri.[8] Indeed, Sparveri has testified that her vacation time increased, she received longevity checks, and her medical insurance co-pay was reduced. In addition, Sparveri asserts that she altered her retirement plans to reflect the adjusted hire date. In sum, the court finds that a reasonable jury could conclude that promissory estoppel applies here. Consequently, Rocky Hill's motion for summary judgment (dkt.# 29) is **DENIED**.

8. In the September 13, 2000 memorandum, Gilbert represented that Rocky Hill had given credit for part-time service to other employees who ultimately obtained full-time positions. A reasonable jury could find that this representation, in addition to bolstering Spar-veri's claim that adjusting the hire dates was not uncommon, would further induce Sparveri to rely on the promise by causing her to believe that if Rocky Hill adjusted hire dates for other employees, it would do so for her as well.

### III. CONCLUSION

For the foregoing reasons, Rocky Hill's motion for summary judgment (**dkt.# 29**) is **DENIED.**

**SO ORDERED.**