■ JOAN BANACH, Appellant, v THE DEDALUS FOUNDATION, INC., Respondent. [934 NYS2d 86]—

In March 1981, Robert Motherwell, a noted abstract expressionist artist, hired plaintiff as his curator, cataloguer and assistant. Over time, plaintiff's duties expanded to include preparing major museum exhibitions of Motherwell's work, and assisting authors writing about Motherwell. Plaintiff went on to coauthor two definitive books about Motherwell and also developed a close personal relationship with the artist. Also in 1981, the Motherwell Foundation was founded and incorporated in Connecticut, to foster the public understanding and appreciation of the work of Motherwell and other modern artists. In June 1991, the name of the foundation was changed to the Dedalus Foundation. At the time this action was commenced, Dedalus maintained its principal office in New York City.

In 1991, plaintiff was elected by Dedalus's board of directors to be corporate secretary. She also was made a board member. In addition to these positions, plaintiff was employed as Dedalus's curator, then as its director. In August 2008, when Dedalus terminated her association with the organization, plaintiff held the office of vice-president.

When plaintiff was first named secretary in 1991, the president of Dedalus was Richard Rubin. In January of that year, Motherwell sent a letter on his personal stationery to Rubin, which plaintiff typed and which stated in pertinent part as follows:

"To put in writing several points that we discussed yesterday, they are as follows:

"1. That Richard Rubin, [plaintiff] and Mel Paskell shall be employed at a minimum of their present salaries (with cost of living adjustments annually) as long as each chooses to remain after my death, as employees of the Motherwell Foundation."

Motherwell died less than six months after he wrote the letter. His last will and testament provided, "In order to ensure

continuity in the handling of my affairs, I hereby authorize my Executors and Trustees to employ my valued assistants and friends, MEL PASKELL and JOAN BANACH, for as long a period of time as my Executors and Trustees shall believe necessary and appropriate." Plaintiff contends that "on multiple occasions" in the years after Motherwell's death, Rubin assured her that "her position was secure in accordance with Motherwell's written intentions."

Beginning in 2002, plaintiff served on a Dedalus committee which was responsible for authenticating pieces of art purported to have been created by Motherwell. In 2008, the committee hired nonparty Jack Flam as its director. Plaintiff asserts that Flam was unqualified and lacked the requisite expertise in Motherwell's work, which led him to falsely authenticate certain works. Plaintiff was vocal about Flam's alleged incompetence and complained that he was damaging Dedalus's reputation. According to plaintiff, Flam retaliated against her by seeking to discredit her and ultimately persuading the foundation to remove her from the board and terminate her employment.

Plaintiff then commenced this action against Dedalus. As is relevant to this appeal, the first cause of action in the amended complaint is based on Motherwell's January 31, 1991 letter to Rubin. It alleges that defendant "entered into a valid and binding contract with Banach under which she would forego other employment in exchange for lifetime employment at" Dedalus. In the alternative, the third cause of action alleges that the letter constituted a contract between Motherwell and Dedalus and that plaintiff was a third-party beneficiary thereof. The second cause of action is for promissory estoppel and alleges that Dedalus, through Rubin and Motherwell, promised that plaintiff would be guaranteed a lifetime position, if she so chose, with the foundation, and that she reasonably relied on that promise.

Dedalus moved to dismiss pursuant to CPLR 3211 (a) (1) and (7). It argued that any promise of lifetime employment made by Motherwell or Dedalus to plaintiff was not binding, because, under both New York and Connecticut law, lifetime employment contracts are considered to be for an indefinite time period and are thus terminable at will. Dedalus further argued that the contract was void under Connecticut law, since corporate directors have no authority to hire employees on a lifetime basis. Dedalus also maintained that, even if the contract was otherwise valid, it was not supported by consideration. Finally, Dedalus asserted that plaintiff's claim for promissory estoppel should be dismissed because plaintiff did not allege that she detrimentally relied on any promise by Dedalus.

The court granted the motion in its entirety. It held that, under either Connecticut law or New York law, plaintiff could not state a cause of action. The court agreed with Dedalus that its board was without power to hire plaintiff for life, and that the purported contract for lifetime employment was deemed to be terminable at will because of its indefinite duration. The court further stated that the contract was not supported by consideration and that, at best, plaintiff supported her promissory estoppel claim with "conclusory assertions that she detrimentally relied on the alleged promise of permanent employment." Finally, the court stated that Motherwell's will superceded the letter concerning plaintiff's employment, and thus extinguished "any presumptive limitation on [Dedalus's] ability to terminate [plaintiff's] employment."

On this appeal, plaintiff contends that Connecticut law governs this dispute. Dedalus does not take a position as to whether Connecticut or New York law applies, maintaining that it would prevail under either.

Under Connecticut law, "permanent" employment contracts are, as a general rule, terminable at will (*D'Ulisse-Cupo v Board of Directors of Notre Dame High School*, 202 Conn 206, 211 n 1, 520 A2d 217, 220 n 1 [1987]). However, plaintiff correctly notes that parties are free to enter into contractual arrangements which provide for employment that can only be terminated for cause (*see e.g. Torosyan v Boehringer Ingelheim Pharms., Inc.*, 234 Conn 1, 662 A2d 89 [1995]; *Coelho v Posi-Seal Intl., Inc.*, 208 Conn 106, 544 A2d 170 [1988]). In *Torosyan*, for example, the trial evidence revealed that the plaintiff had made clear to the defendant during the interview process that he was seeking long-term job security and that one of the interviewers told the plaintiff that he hoped the plaintiff would "stay forever" (234 Conn at 7, 662 A2d at 94). The *Torosyan* court held that, because the employment manual provided that management had the right to discharge employees only for cause, the plaintiff had established an implied employment contract that was not at will (234 Conn at 13-18, 662 A2d at 96-99). In *Coelho*, the court concluded that "there was sufficient evidence to permit the jury to find that the parties had an implied agreement that, so long as he performed his job properly, the plaintiff would not be terminated as a result of conflicts between [the defendant's] quality control and manufacturing departments" (208 Conn at 114, 544 A2d at 174). This evidence included statements by the defendant's president such as "[i]f you come to work with us, you'll never have to worry . . . Those people that join us now are going to grow with us into the future" (208 Conn at 110, 544 A2d at 172).

Dedalus disagrees and argues that this case is controlled by the holding in *Solomon v Hall-Brooke Found., Inc.* (30 Conn App 129, 619 A2d 863 [1993], *affg* 1992 WL 31947, 1992 Conn Super LEXIS 297 [1992]). In that case, the plaintiff purchased a private psychiatric hospital, which she administered. Two years later, she created a foundation to run the hospital as a nonprofit organization. She negotiated an employment contract with the foundation which provided for her employment as the foundation's executive director until age 65 or her retirement, whichever came sooner, and which could not be terminated unless the plaintiff was convicted of theft, fraud or embezzlement in connection with the foundation. When the defendant found that the plaintiff was attempting to exert too much influence on the foundation, it terminated her, and she invoked the agreement. The court declined to enforce the agreement, stating that "Connecticut statutes give directors or trustees of corporations like Hall-Brooke the right to manage the activities, property and affairs of the corporation. C.G.S. § 33-447(a). This right includes the right to appoint officers and to remove officers, with or without cause, but without prejudice to their contract rights, if any. C.G.S. § 33-453(a), (b). *'There is some authority for the proposition that directors have no power to hire an employee on a lifetime basis . . . such cases are generally based on the theory that a board of directors, in selecting the management personnel of the corporation, should not be allowed to hamstring future boards in the overall supervision of the enterprise and the implementation of changing corporate policy.' Osborne v. Locke Steel Chain Co.*, 153 Conn. 527, 537 (1966)." (*Solomon*, 1992 WL 31947, at *25, 1992 Conn Super LEXIS 297, at *75 [emphasis added]).

The facts of this case are more similar to those in *Solomon* than to the cases cited by plaintiff. As in *Solomon*, plaintiff was an insider in a key management position when Motherwell made her a lifetime employee. Motherwell's decision to ensure her continued employment as a major decision-maker in the organization effectively deprived the board of directing the future of the foundation. In *Torosyan* and *Coelho* and the other cases cited by plaintiff, the plaintiff was not in a high-level management position as was plaintiff here. Accordingly, the public policy concerns articulated in *Solomon* were not present in *Torosyan* and *Coelho*. It is further noted that in the cases upon which plaintiff relies, the employer reserved the right to terminate the employee for cause. The agreement at issue here does not contain any such language, making the obligation on Dedalus even more onerous than the situation in *Solomon*.

Plaintiff argues that, even if there was no express or implied

contract for Dedalus to employ her for life, one should be created by estoppel. In support of this argument, she points to the various promises and reassurances allegedly made to her by Motherwell and Rubin, and claims that she acted reasonably in reliance on those statements. She alleges in her amended complaint that she "continuously relied on the guarantee of lifetime employment when making decisions about her professional future."

Under Connecticut law, "[t]o succeed on a claim of promissory estoppel, the party seeking to invoke the doctrine must have relied on the other party's promise . . . [T]he asserted reliance . . . must result in a detrimental change in the plaintiff's position." (*Stewart v Cendant Mobility Servs. Corp.*, 267 Conn 96, 112-113, 837 A2d 736, 746 [2003].) Here, the amended complaint nowhere alleges detrimental reliance. At most, it vaguely alleges that plaintiff relied on promises of lifetime employment when contemplating her future. Such bare allegations are insufficient to support a claim for promissory estoppel (*see Janicki v Hospital of St. Raphael*, 46 Conn Supp 204, 211, 744 A2d 963, 966-967 [1999]). In any event, to the extent that plaintiff does allege reliance, it is based on her having foregone seeking out other employment opportunities based on the representations she received. However, "[i]f the claimed reliance consists of the promisee's forbearance rather than an affirmative action, proof that this forbearance was induced by the promise requires a showing that the promisee *could have* acted . . . Implicit in this principle is the requirement of proof that the plaintiff actually *would have acted* in the absence of the promise" (*Stewart*, 267 Conn at 113, 837 A2d at 747 [internal quotation marks and citations omitted]).

Plaintiff relies on *Stewart* in contending that she was not required to allege (or even prove) the existence of specific opportunities which would have been available to her if she had decided to leave Dedalus. However, in *Stewart*, trial evidence revealed that the plaintiff, a highly-skilled saleswoman, would have had numerous opportunities in her industry if she had decided to look for a new job (267 Conn at 111-112, 837 A2d at 746). Here, plaintiff's entire professional life had been devoted to the artwork of Motherwell. Given such a narrow specialty, it cannot be assumed that there would have been such a plethora of job openings, if any. Further, in *Stewart* the plaintiff testified at trial that she would have left the defendant's employ if it hadn't given her certain assurances of continued employment. Here the amended complaint cannot be construed as alleging that plaintiff would have left Dedalus if not for Motherwell's

and Rubin's reassurances. Indeed, the fact that Dedalus was probably one of the only places, if not the only place, that plaintiff could have applied her expertise in the works of Motherwell suggests that she would likely not have sought a job somewhere else. Accordingly, plaintiff did not sufficiently allege a cause of action for promissory estoppel.

Plaintiff argues, for the first time on appeal, that Motherwell and Rubin had apparent authority sufficient to bind Dedalus to a lifetime employment contract. This is a factual issue which Dedalus may have obviated below. Accordingly, we may not consider it (*see e.g. Gouldborne v Approved Ambulance & Oxygen Serv.*, 2 AD3d 113, 114 [2003], *lv denied* 3 NY3d 605 [2004]).

Based on Connecticut law, we find that any contract between plaintiff and Dedalus to employ her for life was void as against public policy. Thus, we need not determine whether such an agreement was supported by consideration or whether it was superceded by Motherwell's will. Concur—Mazzarelli, J.P., Andrias, Moskowitz, Richter and Abdus-Salaam, JJ. [**Prior Case History: 2010 NY Slip Op 31406(U).**]